James A. JONES, Plaintiff,

v.

James H. BILLINGTON, Defendant.

Civil Action No. 96–01401 (CKK).

United States District Court,
District of Columbia.

Dec. 2, 1997.

John Edward Corcoran, Jr., Newport News, VA, Thomas J. Dandar, Dandar & Dandar, P.A., Tampa, FL, for Plaintiff.

Madelyn Elise Johnson, Assistant U.S. Attorney, Washington, DC, Lana Kay Jones, Library of Congress, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

The Plaintiff filed a Complaint alleging race discrimination, hostile work environment, and retaliation in violation of the Civil Rights Act of 1964, § 717, 42 U.S.C. § 2000e–16 (1988), *as amended by* Act of June 23, 1995, 42 U.S.C. § 2000e–16 (West 1994 & Supp.1997). The Defendant has moved for Summary Judgment, arguing that he is entitled to judgment as a matter of law on all of the claims. Having considered the Motion for Summary Judgment, the Plaintiff's Opposition, the Defendant's Reply, the arguments at the hearing on the Motion for Summary Judgment held on October 31, 1997, the entire record herein, and the relevant law, the Court concludes that there are no genuine issues of material facts, and that the Defendant is entitled to summary judgment.

## I. MATERIAL FACTS NOT IN DISPUTE

Local Rule 108(h) requires a party moving for summary judgment to state concisely those material facts deemed not to be in dispute, while imposing a similar duty on the nonmoving party to direct the Court's attention to specific facts that are genuinely disputed and should be adjudicated at trial. The manifest importance of Rule 108(h) is that it "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C.Cir.1996). Rule 108(h) itself cautions counsel that the Court, in adjudicating a motion for summary judgment, "may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." D.D.C.R. 108(h). This Circuit consistently has affirmed the district court's broad discretion to consider only those facts that counsel have identified. As such, the Circuit has liberated the lower courts from any duty to rummage independently through the voluminous records that often accompany summary judgment motions. *See, e.g., Twist v. Meese,* 854 F.2d 1421, 1425 (D.C.Cir.1988); *Tarpley v. Greene,* 684 F.2d 1, 7 n. 15 (D.C.Cir.1982); *Gardels v. Central Intelligence Agency,* 637 F.2d 770, 773 (D.C.Cir.1980); *Thompson v. Evening Star Newspaper Co.,* 394 F.2d 774, 776–77 (D.C.Cir.1968). Consistent with the foregoing principles, the Court has adduced the following undisputed material facts from the Defendant's Local Rule 108(h) Statement

and the Plaintiff's Local Rule 108(h) Statements.[1]

On December 10, 1990, the Plaintiff, James Jones, was hired as Compensation Representative at the Library of Congress. (Compl. ¶ 9; Defendant's Statement of Material Facts as to Which There is No Dispute ¶ 1 (hereinafter "Deft.'s R. 108(h) Statement.")) In his position as Compensation Representative, he was responsible for processing worker's compensation claims filed by employees of the Library of Congress. (Deft.'s R. 108(h) Statement ¶ 1.) Dr. Sandra M. Charles, the Library Health Services Officer, was the Plaintiff's immediate supervisor. (*Id.*) Mr. Jones is Caucasian; Dr. Charles is African–American. (*Id.*)

The position of Compensation Representative was a "stand alone" GS–8 position. (*Id.* ¶ 2.) A stand alone position is not in a promotion plan and thus does not lead to a higher grade. (*Id.*) In order for the Plaintiff to obtain a higher grade in his position as Compensation Representative, his position would have to be redescribed as a position in a GS–9–11–12 promotion plan. (Deft.'s R. 108(h) Statement ¶¶ 4, 5.) When a position is redescribed, the Library considers the resulting position to be a new position with a vacancy, and the vacancy must be posted. (*Id.*; Deft.'s Exh.[2] 4 (Dep. Test. of Jessie Powell) at 25–26.)

On May, 21, 1992, the Library implemented a hiring freeze due to budgetary concerns. (Pl.'s Exh.[3] 2 (Memorandum from Librarian of Congress.)) Pursuant to Dr. Charles' request, Ms. Joan Velos, a supervisory nurse, forwarded a request on June 30, 1992, to Mr. Jesse Powell in the Library's Personnel Office asking that the position of Compensation Representative be redescribed as a GS–9–11–12 position. (Deft.'s R. 108(h) Statement ¶ 5.) On August 4, 1992, the position of Compensation Representative was redescribed as a GS–9–11–12 position. (Pl.'s Exh. 5.) On September 16, 1992, the Associate Librarian for Management requested an exception to the hiring freeze so as to allow the posting of the vacancy for the newly described position of G–9–11–12 Compensation Representative. (*Id.*)

On November 23, 1992, Dr. Charles issued to the Plaintiff a counseling memorandum, in which she expressed concerns about the Plaintiff's demeanor and attitude. (Counseling Memorandum, attached to Deft.'s Exh. 5).[4] On November 24, 1992, the Librarian of Congress implemented a hiring freeze for administrative and professional positions. (Deft.'s Exh. 1 (Letter from Librarian of Congress to Subcommittee on Libraries and Memorials regarding hiring freeze.)) The Librarian of Congress implemented this hiring freeze because of the ruling in an unrelated case that the Library of Congress engaged in discriminatory practices in the competitive promotion process for professional and administrative positions within the Library. (Pl.'s Exh. 1; Deft.'s Exh. 1.)

On November 25, 1992, Dr. Charles forwarded a request to Personnel to post the new GS–9–11–12 Compensation Representative position. (Deft.'s R. 108(h) ¶ 6). The GS–9–11–12 Compensation Representative position is a GS–301–9–8344 series position. (Pl.'s Exh. 4). Positions in the 301 series are considered administrative. (Aff. of Herbert Junious, attached as Exh. 13 of Deft.'s Position Regarding Pl.'s Hostile Work Environment Claim and the Classification of a Job

---

1. The Court does not rely on any facts that were raised at the hearing but not mentioned in the parties' Rule 108(h) Statements, unless the facts were offered at the hearing to elucidate events recited in the Rule 108(h) Statements.

2. All citations to "Deft's Exh." refer to the exhibits attached to the Defendant's Motion for Summary Judgment, unless otherwise noted.

3. All citations to "Pl.'s Exh." refer to the exhibits attached to the Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

4. In his Complaint, the Plaintiff alleges that when he received the Counseling Memorandum on November 23, 1992, he verbally told Dr. Charles that he thought the counseling memorandum was discriminatory. He does not reiterate that claim in his Rule 108(h) Statement or his Opposition. The Court deems this omission as an indication that the Plaintiff does not consider this fact to be material.

Series (hereinafter "Deft.'s Position.")) [5]

On December 4, 1992, the Plaintiff initiated a dispute with the Library's Dispute Resolution Center because he felt that the "counseling memorandum was unfounded." (Plaintiff's Memorandum to Dispute Resolution Center, attached to Deft.'s Exh. 3.) For purposes of this Motion, the Defendant accepts the Plaintiff's claim that in this 1992 dispute, he alleged that Dr. Charles discriminated against him based on his race when she issued the Counseling Memorandum. (Deft.'s Mot. for Summ.J. at 4 n. 4.) On December 10, 1992, the Plaintiff sent a memorandum to Lucy Tremols of the Employee Assistance office, and informed her that he had heard from a Health Services Secretary that Dr. Charles had made unprofessional comments about the Plaintiff behind his back to other Library staff. (Pl.'s Exh. 13).

In February of 1993, Dr. Charles elected not to extend the work-study program in which the Plaintiff's support staff member participated. (Pl.'s Exh. 16.) On May 14, 1993, the Plaintiff filed an informal dispute with the Library's Dispute Resolution Center. (Pl.'s Exh. 17.) In the May 14, 1993 informal dispute, the Plaintiff complained about the denial of his placement in the promotion plan. (Id.)

In January of 1994, the Plaintiff received a satisfactory performance evaluation from Valerie Grasso, who was the Compensation Program Manager in charge of directing the Plaintiff's work at that time. (Pl.'s Exh. 18.) [6] The Plaintiff contested this evaluation with Ms. Grasso, claiming that he deserved an outstanding evaluation. (Id.)

On March 16, 1994, Ms. Grasso wrote to Dr. Charles, requesting that the Plaintiff be considered for a fitness-for-duty examination because it was her opinion that the Plaintiff was incapable of performing his duties. (Pl.'s Exh. 26.) On March 31, 1994, a panel was convened in order to determine whether the Plaintiff should undergo a fitness-for-duty examination. (Pl.'s Exh. 29.)

In a Memorandum to the Office of Counsel for Human Resources, Mr. Edward Boling, indicated that Dr. Rodney Burbach, Valerie Grasso, Barbara Young, and Edgar Boling were present when a panel convened to discuss whether the Plaintiff should be referred for a fitness-for-duty examination. (Pl.'s Exh. 29). At the hearing on this Motion, the Plaintiff directed the Court's attention to the deposition testimony of Ms. Grasso, in which Ms. Grasso testified that "I wrote out a request that [the plaintiff] be referred for a fitness for duty examination." (Pl.'s Exh. 39, (Grasso Depos.) at 50 lines 8–10.) In response to the question of whether she voted on the decision to refer him, Ms. Grasso stated, "I was at a meeting when I got to discuss my request. A decision was made that he be referred." (Id. at lines 11–13.) In response to the question of whether she participated in the decision, she answered, "yes, I did." (Id. at line 15.)

On March 22, 1994, the Plaintiff filed a formal complaint [7] of discrimination with the Equal Employment Opportunity Complaint Office at the Library. (Deft.'s Exh. 2.) In this formal EEOC complaint, the Plaintiff alleged that Dr. Charles, Jesse Powell of the Human Resources Department, and Valerie Grasso had discriminated against him based

5. On November 24, 1997, the Plaintiff filed a Response to Defendant's Position Regarding a Job Series and Plaintiff's Motion to Strike Declaration of Herbert Junious. The Court has considered the Plaintiff's arguments as to why the Declaration of Herbert Junious should be stricken from the record, and concludes that the Plaintiff's arguments are without merit. Furthermore, the Plaintiff has not provided any facts or evidence that contradict the assertions in Mr. Junious' affidavit. Consequently, the Court denies the Plaintiff's Motion to Strike, and concludes that there is no dispute as to the fact that the GS–9–11–12 Compensation Representative position was an administrative position.

6. In June 1993, the Plaintiff was detailed from the Health Services Office to the Worker's compensation program because of the reorganization of the Worker's Compensation Program and at his request. (Pl.'s Exh. 26.) This detail was effective until December 1994. (Pl.'s Exh. 33.)

7. In his Complaint, the Plaintiff states that he also filed an informal EEOC complaint on January 7, 1994. Plaintiff does not reiterate that claim in either his Rule 108(h) Statement or his Opposition, and does not provide any supporting documentation of that claim. At the hearing, Plaintiff briefly mentioned the informal complaint.

on his race and sexual orientation by denying him a promotion, defaming him, and tampering with his promotion plan and the reclassification of his position. (*Id.*)

On March 31, 1994, a panel decided that the Plaintiff should undergo a fitness-for-duty examination because the information presented to the panel indicated that the Plaintiff was "[unable] to perform his duties because of personality disorders which impair his judgment and adversely affect his working relationships with others." (*Id.*) The Plaintiff underwent the fitness-for-duty examination and was found to be fit and able to perform his duties. (Pl.'s Exh. 36.)

The Plaintiff was promoted on March 19, 1995, from a GS–9 to a GS–11 as a result of the reclassification. (Deft.'s R. 108(h) Statement ¶ 9.) He then was promoted to a GS–12 after the filing of the instant complaint. (Deft.'s Mot. for Summ.J. at 16 n. 9).

In 1992 and 1994, the Plaintiff filed two worker's compensation claims for stress related problems. As to the 1992 claim, Ms. Grasso requested that the claim be assessed by Vinicia McNeil, Supervisory Claims Examiner for the Special Claims Unit. (Pl.'s Exh. 32.) This claim was denied. Similarly, the 1994 claim was denied.

## II. ANALYSIS

### 1. The Standard for Summary Judgment

Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the nonmoving party must "go beyond the pleadings and

by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding a motion for summary judgment, the court must believe all of the evidence produced by the non-movant, and must draw all favorable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505 (1986). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251, 106 S.Ct. 2505. Absent a sufficient showing of a material dispute as to the existence of "an essential element of [the non-moving party's] case, with respect to which [the non-moving party] has the burden of proof," summary judgment for the moving party is required. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### 2. The Hostile Work Environment Claim is Properly Before the Court.

In paragraphs nine through forty-nine in the Complaint, the Plaintiff recites the factual basis for his Complaint. In paragraphs fifty and fifty-one, the Plaintiff alleges that the conduct described in paragraphs nine through forty-nine constitutes outright discrimination based on race. Similarly, in paragraphs fifty-four to fifty-six, Plaintiff alleges that the conduct described in paragraphs nine through forty-nine constitutes intentional retaliation against the plaintiff for having opposed the discriminatory employment practices.

In the fact section of the Complaint, however, the Plaintiff also alludes to a claim of hostile work environment. At the hearing, the Court raised a question as to whether the hostile work environment claim was properly before the Court, as it was not clear from the record that the Plaintiff's administrative claim included allegations of hostile work environment because the administrative complaints all referenced attachments, which had not been provided to the Court in either the Motion or the Opposition. The Court direct-

ed the parties to further review the administrative claims and to file with the Court documents that indicated whether the Plaintiff alleged hostile work environment in his administrative claims. The Court has reviewed those materials submitted by each party for the sole purpose of determining whether the hostile work environment claim was properly before the Court.[8]

The Court concludes that although the administrative claims did not formally allege a hostile work environment charge, the claim is properly before the Court. A Title VII lawsuit includes the claims that are " 'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.' " *Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir.1995) (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)), *cert. denied*, 117 S.Ct. 57 (1996). The hostile work environment alleged in the complaint is not based on conduct that is different from that alleged in the EEOC charge. Furthermore, the basis for the hostile work environment is race, which is the same basis alleged in the EEOC charge. Under these circumstances, the Court finds that the Plaintiff may maintain the action for hostile work environment. *Compare Klein v. Derwinski*, 869 F.Supp. 4, 10 (D.D.C.1994) (holding that plaintiff could raise a new claim of hostile work environment despite failure to raise that claim at administrative level because it arose out of same basis for discrimination alleged specifically in the EEOC charge), *with Park*, 71 F.3d at 908 (rejecting hostile work environment claim because EEOC

lacked the factual support for hostile work environment claim that was alleged in the complaint).

### 3. The Burden Shifting Paradigm Under *McDonnell Douglas*

In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court fashioned a framework for analyzing Title VII cases in which a plaintiff does not have direct evidence of discrimination. Under *McDonnell Douglas*, the complainant first must establish a *prima facie* case of discrimination based on one or more of the characteristics to which Title VII extends protection. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

If the plaintiff establishes a *prima facie* case, the defendant assumes the burden of producing a legitimate, non-discriminatory reason for the challenged action. *See id.* The defendant need not persuade the Court that the defendant actually relied upon the articulated reason; rather the defendant merely must produce a reason that, if unrebutted by the plaintiff, legally would justify judgment in the defendant's favor. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. Upon the defendant's production of a legitimate non-discriminatory reason, the burden shifts to the plaintiff to prove, by a preponderance of the evidence, that the employer's proffered reasons are merely a pretext for invidious discrimination. *See McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817. The plaintiff retains the ultimate burden of persuasion at all times. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.[9]

8. The Plaintiff filed a pleading entitled "Supplemental Response to Defendant's Motion for Summary Judgment." The Court, however, will not consider the pleading as a supplemental response to the Motion for Summary Judgment. The sole reason that the Court directed the parties to file materials after the hearing was to address two issues that were raised at the hearing. The Court did not intend to have the parties belatedly file additional supporting materials for their positions on other issues raised in the pleadings. Accordingly, the Court did not rely on any of the materials provided in the Supplemental Response filed by the Plaintiff or the Defendant's Position unless the material addresses the narrow issues of (1) whether the Plaintiff's earlier administrative claims included allegations of hostile work environment and (2) whether the

GS–9–11–12 Compensation Representative position was professional and/or administrative.

9. The Plaintiff's Complaint consists of 49 paragraphs setting forth the factual basis of his Complaint. In paragraphs 50, 51, 54, 55, and 56 of the Complaint, he simply states that the preceding paragraphs constitute direct race discrimination and retaliation, but does not specify the acts that he considers to be discriminatory or retaliatory. Likewise, in his Opposition to the Motion for Summary Judgment, while he recites the correct legal standards for his claims of discrimination, hostile work environment, and retaliation, he does not apply the facts of his case to the different paradigms. The Plaintiff's failure to specify the factual predicate for the alleged un-

#### 4. Race Discrimination

The Plaintiff appears to allege that he was subject to racial discrimination when (1) Dr. Charles failed to post the vacancy for the new GS–9–11–12 Compensation Representative position; (2) Ms. Grasso requested the fitness-for-duty test, and then voted to refer him for the examination; (3) Ms. Grasso referred his 1992 worker's compensation claim to Ms. McNeil, the supervisory Claims Examiner in the Office of Worker's Compensation Programs; (4) Ms. Grasso contested his 1992 claim; and (5) Ms. Grasso and Dr. Charles became deeply involved in his 1994 worker's compensation claim.

■ To establish a *prima facie* case of race discrimination, the Plaintiff must show that (1) he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that other similarly situated non-white employees were not subject to that action. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 & n. 6, 101 S.Ct. 1089 (1981) (recognizing that the McDonnell Douglas model of a *prima facie* case is flexible and will vary depending on the facts of the case); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

##### A. Failure to Post the Vacancy

■ The Plaintiff, in his Rule 108(h) statement notes that in September 1992, the Associate Librarian for Management requested that the Library Management Team make an exception to the budgetary hiring freeze that had been in effect since May 1992 by posting the vacancy for the GS–9–11–12 Compensation Representative, *see* Pl.'s Exh. 5, but that the Library never posted the vacancy. He claims that the decision not to post this vacancy was based on his race. As to the *prima facie* case for this claim, the Plaintiff has shown that he is a member of a protected class, and he arguably suffered an adverse decision when the vacancy was not posted. The Plaintiff, however, has not shown that the Library Management Team made excep-

tions to the May 1992 hiring freeze for other positions. In addition, the Plaintiff does not state if or when the May 1992 hiring freeze was lifted. Accordingly, he has not established a *prima facie* case as to this conduct because he did not establish disparate treatment.

■ In a related argument, the Plaintiff suggests that in November 1992, Dr. Charles was responsible for preventing the posting of the vacancy to which he wanted to apply, and that she did so based on his race. *See* Compl. ¶ 13. To support his claim of disparate treatment, the Plaintiff refers to the Library's newsletter, the *Gazette,* which advertised job vacancies during the month of December 1992. *See* Pl.'s Exh. 6.

Assuming that the Plaintiff thereby establishes a *prima facie* case, the Defendant argues that it was not Dr. Charles who decided not to post the vacancy. The Court agrees that the Plaintiff has not provided any factual support for his claim that Dr. Charles was responsible for the non-posting of the vacancy. None of the materials attached to the Plaintiff's Opposition reflect that Dr. Charles participated in the decision not to post the vacancy. Rather, the record reveals that on November 24, 1992, the Librarian of Congress implemented a hiring freeze. *See* Deft.'s Exh. 2. The November 1992 hiring freeze referenced by the Librarian in his letter to the Subcommittee on Libraries and Memorials affected administrative and professional positions. *See* Deft.'s Exh. 1. The GS–9–11–12 Compensation Representative position was an administrative position that was covered by the hiring freeze. *See* Pl.'s Exh. 4 (reflecting that the GS–9–11–12 Compensation Representative position is a GS–301–9–8344 series position); Aff. of Herbert Junious, attached as Exh. 13 of Deft.'s Position.

In an attempt to refute the Defendant's legitimate, non-discriminatory reason for the non-posting of the GS–9–11–12 Compensation Representative, the Plaintiff again di-

---

lawful conduct has required that the Court make a determination as to which facts he believes evidence racial discrimination, a hostile work environment, and retaliation. The Plaintiff, having failed to articulate the factual basis for his

claims, is left with the Court's designation of the factual support for the Plaintiff's claims of racial discrimination, a hostile work environment, and retaliation.

rects the Court's attention to the Library's newsletter, the *Gazette*. *See* Pl.'s Exh. 6. The hiring freeze did not affect all jobs; rather it pertained only to administrative and professional positions. The Plaintiff has not presented any evidence that the jobs listed in the Gazette were administrative or professional, and therefore has not raised an issue as to whether the legitimate nondiscriminatory reason, i.e. the November 24, 1992 hiring freeze, is false or whether the non-posting was more likely motivated by discrimination. The Defendant therefore is entitled to Summary Judgment.

### B. *Fitness for Duty Examination*

On March 16, 1994, Ms. Grasso requested in writing that the Plaintiff undergo a fitness-for-duty examination. Again, the Plaintiff meets the first element of the *prima facie* case because he is in a protected class. The Defendant argues that the referral for a fitness-for-duty examination is not an adverse personnel action because he ultimately was found fit for duty. *See* Deft.'s Reply to Pl.'s Opp'n to Deft.'s Mot. for Summ. J. (Deft.'s Reply) at 6. For purposes of this Motion, however, the Court assumes that a request for a fitness for duty examination is an employment action covered by Title VII.

With reference to whether other similarly situated non-whites were not forced to undergo the fitness-for-duty examination, the Plaintiff makes a blanket statement that other non-white employees were treated more favorably than him. *See* Pl.'s Opp'n to Deft.'s Mot. for Summ.J. (Pl.'s Opp'n) at 13 ("Contrary to Government's contentions, Plaintiff was treated differently than other Library employees who were African Americans.") Then, apparently in an attempt to show that other African–Americans were treated more favorably, the Plaintiff states that he testified at his deposition that "action against an African–American coworker, one Harrison Pyle, were [sic] taken only after months had passed, during which time Dr. Charles refused to take any action. . . ." *See* Pl.'s Opp'n at 14. The Plaintiff, however,

neither supplies his deposition testimony about Harrison Pyle, nor any other sworn testimony or statements about the incident involving Harrison Pyle.

Similarly, the Plaintiff directs the Court's attention to a counseling memorandum that Dr. Charles issued to Nurse Trecolia Montgomery. *Id.* at 14; Pl.'s Exh. 14. The Plaintiff argues that Dr. Charles did not issue this counseling memorandum until the Plaintiff complained twice about Nurse Montgomery. *Id.*

The Plaintiff has failed to direct the Court to any supporting affidavits or deposition testimony upon which the Court could conclude that similarly situated African Americans were treated disparately. Mr. Pyle allegedly was involved in criminal activity, and eventually was removed from his position for that conduct. As to Nurse Montgomery, Dr. Charles issued a counseling memorandum when she perceived that Nurse Montgomery had engaged in inappropriate conduct. Both of these instances undermine the Plaintiff's argument that he was treated differently from other similarly situated non-white persons.[10] Again, the Court concludes that the Plaintiff has failed to establish a *prima facie* case of race discrimination based on Ms. Grasso's request for the fitness-for-duty examination.

Even assuming that the Plaintiff established that other similarly situated, non-whites were treated more favorably when experiencing work difficulties, Ms. Grasso cites in detail a legitimate, non-discriminatory basis for her request. At this point, to survive summary judgment, the Plaintiff must raise a material issue as to his ultimate burden of proving that the Defendant's reason was a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Plaintiff may meet his ultimate burden by establishing either that discriminatory animus "more likely mo-

10. Nurse Montgomery and Mr. Pyle may not even be similarly situated given that the conduct that was the basis for the actions taken against them is glaringly distinguishable from the conduct that Ms. Grasso attributed to the Plaintiff as the basis for her request for the fitness for duty examination.

tivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

In the instant case, the Plaintiff does not challenge the truthfulness of the reasons stated in Ms. Grasso's request. Rather, he focuses solely on the fact that other allegedly similarly situated African Americans were not subject to the fitness-for-duty test. Yet once the Defendant articulates a legitimate, non-discriminatory reason for its actions, the inference of discrimination raised by the *prima facie* case "simply drops out of the picture." *St. Mary's Honor Ctr.,* 509 U.S. at 510–11, 113 S.Ct. 2742. The mere conclusory statement that he was the only person subject to the examination does not suffice to establish a material issue as to whether Ms. Grasso's proffered reasons for requesting the examination was a pretext for discrimination. *See Banks v. Chesapeake & Potomac Telephone Co.,* 802 F.2d 1416, 1431 (D.C.Cir. 1986). Accordingly, the Defendant is entitled to Summary Judgment on this claim.[11]

### C. The Workers Compensation Claims

█ The Plaintiff vaguely intimates that Ms. Grasso discriminated against him in 1992 by requesting that his worker's compensation claim be handled by Ms. McNeil, a woman with whom the Plaintiff had confrontations in the past, and makes a related argument that Ms. Grasso discriminated against him by contesting the claim. *See* Pl.'s Rule 108(h) ¶ 13. With respect to the issue of Ms. Grasso's request that his claim be assigned to Ms. McNeil, the Court concludes that the Plaintiff has failed to make out a *prima facie* case. Although the Plaintiff is in a protected class, and Ms. Grasso testified that she had never before asked that a specific claims examiner handle a claim, *see* Pl.'s Exh. 39 (Grasso's Depos.) at 90–92, there is no evidence on this record that Ms. McNeil actually handled the claim. The Plaintiff does not indicate that Ms. McNeil was responsible for the denial of his 1992 claim. He has shown no relation-

ship between Ms. Grasso's request and any adverse employment action.

Even assuming that Plaintiff had set forth a *prima facie* case, Ms. Grasso further testified to a legitimate, nondiscriminatory reason for her request. Specifically, she testified that she asked that the claim be handled by a supervisory claims examiner outside the Library of Congress's office because the Plaintiff worked in the office that normally would handle such claims and she therefore was concerned for his privacy. (Pl.'s Exh. 39 (Grasso Dep.) at 90–92). To refute this explanation, the Plaintiff provided his own affidavit in which he claims to know three other unnamed African–Americans who filed stress related claims and whose claims were not controverted. Rather than addressing the legitimate, non-discriminatory reasons proffered by the Defendant, the Plaintiff provides only conclusory statements, without supporting documentation, about how other allegedly similarly situated non-white employees were treated disparately. The Plaintiff does not indicate, however, whether or not those African American employees worked with worker's compensation claims where some privacy concerns would be implicated.

Likewise, the claim that Ms. Grasso discriminated against him by controverting his 1992 claim must fail because the Plaintiff did not establish that other similarly situated non-white employees were treated more favorably. To support his claim that he was treated differently, the Plaintiff relies again only on his own affidavit, in which he baldly states without reference to any supporting documentation, that he knows of three unnamed African–Americans whose claims were not controverted. The Plaintiff does not provide any explanation about this information in his Rule 108(h) Statement, but relies solely on the affidavit that he filed separately from his Rule 108(h) Statement and his Opposition. Notwithstanding the complete absence of this information in both the Rule 108(h) Statement and the Opposition, the affidavit itself fails to set out sufficient facts about the alleged similarly situated African Americans

---

11. Likewise, to the extent that the Plaintiff complains that Ms. Grasso was on the panel, and thus discriminated against him by voting to refer him for an examination, the Plaintiff has not offered any facts that indicate why the reasons cited by the panel for referring him for an examination were a pretext for discrimination.

and their stress related claims. On this record, there is insufficient evidence upon which the Court could conclude that the Plaintiff was treated differently from African Americans. Absent such evidence, the Plaintiff has not made out a *prima facie* case, and the Defendant therefore is entitled to summary judgment as to the claims of discrimination pertaining to the 1992 stress related worker's compensation claim.

In addition, the Plaintiff claims that "Dr. Charles and Valerie Grasso were deeply involved in Plaintiff's worker's compensation claim which Plaintiff filed in March 1994." *See* Pl.'s Rule 108(h) ¶ 13. In support of this allegedly discriminatory conduct, the Plaintiff supplies a letter written by Ms. Grasso to Ms. Wright at the Office of Workers Compensation Programs, in which Ms. Grasso indicates that the claim had been reviewed by Ms. Grasso, Mr. Trew, and Dr. Charles. *See* Pl.'s Exh. 31. The Court finds that the Plaintiff has not provided any basis upon which the Court could conclude that Ms. Grasso and Dr. Charles were wrongly involved in the review of his claim, or that it was even unusual for them to review the claims. In addition, the Plaintiff's affidavit does not address whether they reviewed the other claims mentioned in his affidavit that he claims were not controverted. *See* Pl.'s Notice of Filing Affidavit. The Plaintiff has not established an adverse action by merely asserting that Ms. Grasso and Dr. Charles reviewed his claim. Accordingly, as to the Plaintiff's contention that the handling of both of these worker's compensation claims was based on race discrimination, the Defendant is entitled to summary judgment.

### 5. Hostile Work Environment

■ In his Complaint and Opposition to the Defendant's Motion for Summary Judgment, the Plaintiff alleges that the Defendant engaged in a campaign of harassment against him. *See* Compl. ¶ 2; Opp'n at 2. The Su-

preme Court has held that Title VII is violated when "discriminatory conduct [is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993); *see also Park,* 71 F.3d at 906. The requirements of the *prima facie* case for a claim of hostile work environment based on race are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was subject to unwelcome racial harassment; (3) that the harassment occurred because of his race; (3) that the harassment affected a term, condition or privilege of his employment; and (4) that the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment. *Snowden v. Kelso, II,* 1996 WL 43549, *2 (D.D.C. Jan.31, 1996); *Brumback v. Callas Contractors, Inc.,* 913 F.Supp. 929, 939 (D.Md.1995); *Owens v. Fraser Public Schools,* 1995 WL 871216, *9 (E.D.Mich. Oct.31, 1995).

■ In support of his hostile work environment claims, the Plaintiff recites a litany of events that he claims created a hostile work environment. Pl.'s Opp'n at 2–3 (citing Complaint ¶¶ 4–24). He provides objective factual support, however, for only a few of many events to which he refers in his Opposition. Thus, in accordance with Rule 108(h) and *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C.Cir.1996), the Court relies on only those facts in the Rule 108(h) Statements to determine whether the Plaintiff has set forth any material issues of fact as to the hostile work environment claim.[12]

A review of his Rule 108(h) Statement, reveals that the Plaintiff appears to be contending that he was subject to a hostile work environment based on his race when he was denied a promotion;[13] when his coworkers

12. At the Motions hearing, the Plaintiff cited other events that were not in the Rule 108(h) statement but that he claimed were part of the hostile work environment. For example, he cited Ms. Grasso's closed door policy (Pl.'s Exh. 12) and hearsay statements from a work-study student, Darlene Lewis, that Ms. Grasso and Nurse

Montgomery went into his office and reviewed his work. The Court did not consider these events because they were not mentioned in the Plaintiff's R. 108(h) Statement.

13. *See* Pl.'s R. 108(h) Statement ¶ 3.

made unprofessional comments about him;[14] when he had an alleged racially motivated confrontation with other employees;[15] when Nurse Montgomery received a counseling memorandum because of comments that she made to another employee in which she accused that employee of favoring white nurses;[16] when he received a satisfactory, rather than outstanding, evaluation from Ms. Grasso;[17] when he received a critical letter from Ms. Grasso;[18] when Ms. Grasso attempted to curtail his responsibilities;[19] when Ms. Grasso requested that he undergo a fitness-for-duty examination;[20] and when, in 1992, Ms. Grasso asked that the Plaintiff's worker's compensation claim be assigned to Vinicia McNeil.[21]

In addition, Plaintiff complains that Dr. Charles continued to speak to panel member Dr. Burbach about the Plaintiff's Fitness for Duty Examination notwithstanding the fact that she had recused herself from the panel. See Pl.'s R. 108(h) Statement ¶ 5. In this regard, the Plaintiff refers to the deposition testimony of Dr. Burbach, but fails to provide any citation to an exhibit number or even the page number of the deposition testimony, which the Court determined on its own accord is Pl.'s Exh. 40. In this deposition testimony, Dr. Burbach testified that he spoke to Dr. Charles frequently, but does not specifically recall conversing with her about the Plaintiff. See Pl.'s Exh. 40 at 16; 32–33; 34; 70; 74. The Plaintiff misconstrues the substance of Dr. Burbach's testimony, and the Court finds no factual support for this allegation.

In the instant case, the Plaintiff has not demonstrated that any of the conduct of which he complains was related to his race, or that his workplace was permeated with racially discriminatory behavior. Only two

incidents mention or relate to race at all. The first is the counseling memorandum that Dr. Charles issued to Nurse Montgomery. See Pl.'s Exh. 14. In this counseling memorandum, Dr. Charles indicated that Nurse Montgomery accused an African–American work study student of preferring white nurses over African–American nurses. Id. Second, the Plaintiff reported to a nurse that he had heard that "racial and prejudicial remarks were being made against him," to other individuals, though not in his presence. See Pl.'s Exh. 15. The counseling memorandum, which involves comments directed at another employee and not at the Plaintiff, and the nurse's notes, which contain broad and unspecified allegations of race-based comments by a coworker, alone are insufficient grounds for the Court to conclude that the actions taken against the Plaintiff were racially motivated, or that the Plaintiff's workplace was "permeated with racial intimidation, ridicule, or insult sufficient to create a hostile working environment." See Owens, 1995 WL 871216, * 9 (one comment about "Buckwheat" did not create an abusive environment); see also Snowden, 1996 WL 43549, *3 (no prima facie case based on shouting and pointing finger without evidence that conduct was related to sex); Henry v. Guest Services, 902 F.Supp. 245, 251 (D.D.C.1995) (one cartoon about depression insufficient to establish harassment based on disability). Accordingly, the Defendant is entitled to Summary Judgment on this claim.

### 6. Retaliation

 To establish a prima facie case of retaliation, the Plaintiff must establish "(1) that [he] engaged in activity protected by the statute; (2) that the employer … engaged in conduct having an adverse impact on the

---

14. See Pl.'s R. 108(h) Statement ¶ 7 (citing Pl.'s Exh. 13).

15. See Pl.'s R. 108(h) Statement ¶ 7 (citing Pl.'s Exh. 15, which are notes from nurse to whom Plaintiff complained that he had a meeting with Dr. Charles and a coworker in which he learned that other employees were making racial and prejudicial remarks about him).

16. See Pl.'s R. 108(h) Statement ¶ 7 (citing Pl.'s Exh. 14).

17. See Pl.'s R. 108(h) Statement ¶ 10 (citing Pl.'s Exh. 18).

18. Id. (citing Pl.'s Exhs. 19, 20).

19. Id. (citing Pl.'s Exhs. 21, 22).

20. Id ¶ 12 (citing Pl.'s Exh. 26).

21. Id. ¶ 13 (citing Pl.'s Exh. 32; 39 at 17–21, 90–92).

plaintiff; and (3) that the adverse action was causally related to the plaintiff's exercise of the protected rights." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C.Cir.1988) (citing *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985)); *McKenna v. Weinberger*, 729 F.2d 783, 788, 790 (D.C.Cir.1984). If the plaintiff meets the *prima facie* case, then as in other Title VII contexts, the defendant may introduce evidence of a legitimate, non-retaliatory reason for its actions. *Berger*, 843 F.2d at 1423; *McKenna*, 729 F.2d at 790. The plaintiff then has the burden of persuasion, by a preponderance of the evidence, that the proffered reason is a pretext for retaliation. *McKenna*, 729 F.2d at 790.

### The Protected Activity

Section 2000e–3 [22] of the Civil Rights Act of 1964 prohibits retaliation based on the fact that an employee "has opposed any practice [that is an unlawful employment practice], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." In its Motion for Summary Judgment, the Defendant accepts for purposes of his Motion that the dispute filed by the Plaintiff on December 4, 1992 included allegations of race, and thus constitutes protected activity. Likewise, the formal EEOC complaint of race discrimination that he filed on March 22, 1994, is protected activity.

■ In contrast, the grievance filed by the Plaintiff with the Library's Dispute Resolution Center on May 14, 1993 is not protected activity because he fails to allege any discrimination based on race, color, religion, sex, or national origin. See Pl.'s Exh. 17 (making no mention of any discrimination at all, and no mention of race); *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 512 n. 4 (3d Cir.1997) (general grievance about working conditions and questioning job security not protected where it did not contain any reference to conduct that is protected by Title VII); *Barber v. CSX Distribution Services*,

68 F.3d 694, 701 (3d Cir.1995) (letter complaining about failure to be promoted, but without mention of discrimination, is not protected activity because a "general complaint about unfair treatment does not translate into charge of illegal age discrimination").

### The Alleged Retaliation

■ The Plaintiff's allegations of retaliation appear to be based on the fact that his promotion was not posted; that Ms. Grasso requested that his 1992 Compensation claim be handled by Ms. McNeil, see Pl.'s Exh. 32; that he lost his support staff in February of 1993, see Pl.'s Exh. 16; that he received a satisfactory, not outstanding, evaluation on January 17, 1994, see Pl.'s Exh. 18; that he received a critical letter from Ms. Grasso in February 1994, see Pl.'s Exh. 19; and that on March 16, 1994, Ms. Grasso requested that he undergo a Fitness Test, see Pl.'s Exh. 26.

"Although actions short of termination may constitute an adverse employment action within the meaning of the statute, 'not everything that makes an employee unhappy is an actionable adverse action.'" *Manning v. Metropolitan Life Insurance Co., Inc.*, 127 F.3d 686, 692 (8th Cir.1997) (quoting *Montandon v. Farmland Industries, Inc.* 116 F.3d 355, 359 (8th Cir.1997)). Some of the retaliation alleged in the instant case does not rise to the level of adverse action, and must fail as a matter of law. *See Berger*, 843 F.2d at 1424.

As to the claim that he lost his support staff in February 1993 in retaliation for filing the informal dispute in December of 1992, the Court finds that the Plaintiff has not demonstrated or even argued how this action had any adverse effect on his employment. Rather than providing the Court with documentation, support, or even argument regarding the actual effect that the loss of the support had on him, the Plaintiff provides only an anticipatory memo that he wrote to Dr. Charles when he learned that he would be losing his support staff, in which he claims that the loss of the support staff, coupled

---

**22.** This Circuit interprets § 2000e–16 to include claims of retaliation, as defined in § 2000e–3. *See Barnes v. Small*, 840 F.2d 972, 976 (D.C.Cir. 1988) (relying on both § 2000e–16 and § 2000e–3 in case of federal employee alleging retaliation); *Clark v. Marsh*, 665 F.2d 1168, 1171 n. 1 (D.C.Cir.1981); *Hayes v. Shalala*, 917 F.Supp. 4, 4 (D.D.C.1995).

with other factors, would "impact the Workers Compensation Program." *See* Pl.'s Exh. 16. Absent a showing that the loss of the support staff was a "tangible change in duties or working conditions that constituted a material employment disadvantage," the Plaintiff fails to establish a *prima facie* case with respect to this claim. *Manning*, 127 F.3d 686, 692; *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994) (finding that plaintiff's claims that her job became more stressful because she had to watch door, listen for fax, and monitor people entering and exiting office amounted only to mere inconveniences and alteration of job responsibilities, and did not rise to level of adverse employment action).

Likewise, the, satisfactory evaluation that he received in 1994 and the February 1994 letter from Ms. Grasso drawing his attention to some problems with his work do not rise to the level of adverse actions because he has not demonstrated how these actions adversely affected his employment or promotional opportunities. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3rd Cir. 1997) (holding that "unsubstantiated oral reprimands" and "unnecessary derogatory statements" that did not affect plaintiff's employment were not adverse actions); *see also Glovinsky v. Cohen*, 983 F.Supp. 1, 3 (D.D.C.,1997) (holding that plaintiff had not alleged an adverse employment action by claiming only that supervisor treated plaintiff differently after plaintiff complained about supervisor's remark because the 'different treatment' neither affected his position, nor any future opportunities). Furthermore, the evaluation, although lower than his past evaluations, was still satisfactory. The Plaintiff has offered no basis for the Court to conclude that a satisfactory evaluation is in fact a negative or unfavorable evaluation. *See Smart v. Ball State University*, 89 F.3d 437, 442 (7th Cir.1996); *Meredith v. Beech Aircraft Corporation*, 18 F.3d 890, 896 (10th Cir.1994). It is noteworthy that the Plaintiff received promotions following the satisfactory evaluation and the letter from Ms. Grasso. *See* Deft.'s R. 108(h) Statement ¶ 15; Deft's Mot. for Summ.J. at 16 n. 9; *Meredith*, 18 F.3d at 896 n. 4.

*Causal Connection*

A causal connection may be established by showing that the employer knew of the protected activity and that the alleged adverse action took place shortly following the protected activity. *Chen v. General Accounting Office*, 821 F.2d 732, 739 (D.C.Cir. 1987); *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985). As noted above, the Plaintiff made no showing that Dr. Charles was responsible for the non-posting. He also has not shown that the Librarian of Congress, who implemented the hiring freeze in 1992, either had actual or constructive knowledge of the 1992 dispute that the Plaintiff filed. *See McCollum v. Bolger*, 794 F.2d 602, 611 (11th Cir.1986) (finding no retaliation where decision maker had no knowledge of protected activity); *Talley v. United States Postal Service*, 720 F.2d 505, 508 (8th Cir.1983) (same). Accordingly, his claim as to the non-posting of the promotion fails because he has not demonstrated a causal connection between his protected activity and the adverse action.

Similarly, the Plaintiff has not demonstrated a causal connection between the filing of his 1992 dispute against Dr. Charles, and Ms. Grasso's request to have his 1992 worker's compensation claim assigned to Ms. McNeil because he has not proffered any evidence that shows that Ms. Grasso was aware that he filed the 1992 dispute against Dr. Charles. *See McCollum*, 794 F.2d at 611; *Talley*, 720 F.2d at 508. Furthermore, as the Court noted earlier, there is no evidence that the claim was assigned to Ms. McNeil. Accordingly, it is doubtful that the request to have Ms. McNeil review his claim was actually an action that had an adverse effect upon the Plaintiff's employment.

As to Ms. Grasso's request on March 16, 1994, the Court again concludes that this request has no causal connection to the informal dispute that the Plaintiff filed against Dr. Charles in December 1992. Sixteen months separate the two events and, as previously noted, the Plaintiff did not show that Ms. Grasso had any knowledge that the Plaintiff filed the 1992 dispute against Dr. Charles. The Court concludes that these

facts preclude a finding of a causal connection.

As to the causal connection between Ms. Grasso's request for the fitness-for-duty examination on March 16, 1994, and the Plaintiff's filing of the formal EEOC complaint on March 22, 1994, the alleged retaliatory act occurred prior to the protected activity. This sequence of events prevents a finding of a causal connection between the two events.[23]

## CONCLUSION

For the foregoing reasons, the Court concludes that there are no genuine issues of material dispute, and that the Plaintiff has not met his burden of establishing that he was subject to race discrimination, a hostile work environment, or retaliation. Accordingly, in a separate Order, the Court will GRANT the Defendant's Motion for Summary Judgment, and will DENY Plaintiff's Motion to Strike.

---

**23.** The Court notes that in the Complaint, the Plaintiff mentions that he filed an informal EEOC complaint on January 7, 1994. Neither party mentions the January 7, 1997 informal EEOC complaint in their Rule 108(h) Statements. Furthermore, the informal EEOC complaint was mentioned only in passing at the hearing. Consequently, the Court concludes that the issue of the January 7, 1997 EEOC complaint was not presented to the Court for consideration. Nonetheless, even if it were properly before the Court, the Court would conclude that, assuming the Plaintiff also established a causal connection between the January 7, 1997 EEOC complaint and the request for the fitness for duty examination, the Defendant articulated legitimate, non-retaliatory reasons for Ms. Grasso's request. As discussed above, the Plaintiff failed to raise a genuine issue of material fact with respect to whether the Defendant's proffered reason was false and a pretext for discrimination.