Dorthea L. CRENSHAW, Plaintiff,

v.

### GEORGETOWN UNIVERSITY, Defendant.

No. Civ.A. 97–0063(CKK).

United States District Court, District of Columbia.

Sept. 4, 1998.

Michael J. Kator, Laura Stefani, Kator, Scott & Parks, Washington, DC, for Plaintiff.

Dorthea L. Crenshaw, Silver Spring, MD, pro se.

George H. Mernick, III, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Plaintiff Dorthea L. Crenshaw has brought a complaint against Georgetown University ("Georgetown") alleging hostile work environment, retaliation, and constructive discharge. Pending before the Court is Defendant's Motion for Summary Judgment on all counts. Having considered the pleadings, affidavits, deposition testimony,[1] and documentary evidence, the Court grants Defendant's motion in full.

## I. BACKGROUND

Plaintiff Dorthea L. Crenshaw, an African–American, began work at Georgetown University on April 25, 1988, as Assistant to the Dean of Student Affairs. Her duties involved answering the telephone and various other administrative tasks. Crenshaw Dep. at 10, 32, 37–38, 64–67 (Def.'s Ex. 1). One of the reasons that Plaintiff sought employment at Georgetown was to take advantage of the tuition benefits available to Georgetown employees. Crenshaw Dep. at 35. Plaintiff was admitted to the nursing program at Georgetown in 1989, and began taking courses that fall. Crenshaw Dep. at 42; Def.'s Ex. 5 (memo regarding tuition benefits).

Carol Kachadoorian, who is white, supervised Plaintiff from the fall of 1992 until Plaintiff resigned on August 12, 1994. Crenshaw Dep. at 45. Under Kachadoorian, Plaintiff's title changed twice. In 1993, Plaintiff's title was changed from Assistant to the Dean to Receptionist. This change was part of a larger reorganization that took place in the office in which many employees' titles were changed. Crenshaw Dep. at 32, 47–48. Plaintiff was unhappy with this title. She complained to Kachadoorian, and, in June 1994, her title was changed from Receptionist to Office Services Supervisor. Crenshaw Dep. at 46–47, 75.

Plaintiff's position was initially classified as a "non-teaching academic." Georgetown's policy is that tuition benefits for non-teaching academics are capped at a certain number of semesters, whereas "staff" tuition benefits are calculated according to how many credits are used. Crenshaw Dep. at 44; Kachadoorian Decl. ¶ 5. In the summer of 1993, believing that a staff classification would better enable her to complete her degree, Plaintiff requested that her position be re-classified as staff. This request was granted. Plaintiff later requested that her status be changed

---

1. In Plaintiff's Supplement to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff alleges that her deposition "was taken under protest and without the benefit of counsel." Pl.'s Supp. at 1. While it is true that Plaintiff was not represented at the time of her deposition, Plaintiff agreed on the record to proceed without counsel. The Court offered Plaintiff the option of delaying her deposition until she could obtain new representation, which Plaintiff declined. Plaintiff plainly cannot now argue that her deposition testimony should be discounted.

back to non-teaching academic, and this request was also granted. Crenshaw Dep. at 105, 44–52, 60–62, 100–101; Kachadoorian Decl. ¶¶ 5–6.

During a May 1993 lunchtime conversation, Kachadoorian made a "derogatory comment about black people." Crenshaw Dep. at 135. According to Plaintiff, Kachadoorian told some co-workers, including Plaintiff, about a time that she had hesitated to correct some children who were misbehaving because they were black. Kachadoorian went on to observe that many of the black people in her neighborhood behaved inappropriately, and that she did not want her own children exposed to such behavior. Id. at 136–137. This is the only such comment Plaintiff could recall at the time of her deposition. Id. at 142.

In November 1993, Plaintiff filed an internal discrimination complaint based on her belief that her supervisors were discriminating against African–Americans in hiring. Crenshaw Dep. at 131–32. Around the same time, Plaintiff asked one of the deans if Kachadoorian could be replaced as her supervisor, but was refused. Plaintiff and defendant disagree about whether such an accommodation could have been made. Crenshaw Dep. at 148–49; Kachadoorian Decl. ¶ 8.

In the spring of 1994, Plaintiff received a phone call from another Georgetown employee who informed Plaintiff that she had "come across" a disciplinary file on Plaintiff. Crenshaw Dep. at 143. Plaintiff believes that this file was being kept for the purpose of terminating her. Id. at 134–35. Defendant disputes that Plaintiff can prove such a file existed. Def.'s Reply at 4. Around the same time, there were widespread complaints about inadequate telephone coverage, one of Plaintiff's principal duties. Crenshaw Dep. at 71–75; Kachadoorian Decl. ¶ 3.

Plaintiff filed a complaint with the EEOC in May 1994. In her complaint, she alleged that she had been harassed by Kachadoorian because of her race and in retaliation for filing internal complaints. See Def.'s Ex. 6 (EEOC Notice of Charge of Discrimination).

In the summer of 1994, Plaintiff's telephone duties were increased and she was asked to resign from certain committees. Crenshaw Dep. at 68–76; Kachadoorian Decl. ¶ 3. Plaintiff also alleges that she was stripped of her event and meal planning duties at this time. Pl.'s Ex. 1 at 2. This allegation conflicts with Plaintiff's earlier deposition testimony, in which she testified that her role with respect to planning social functions changed in 1992. Crenshaw Dep. at 80–83. The parties dispute whether these changes to Plaintiff's job duties were made in retaliation for Plaintiff's EEOC complaint or in response to the frequent complaints about inadequate telephone coverage in the office.

Also during the summer of 1994, Plaintiff learned that paperwork necessary to effect her re-classification from staff back to non-teaching academic had not been completed, and that as a result she would be unable to take any classes that fall. Crenshaw Dep. at 103. Plaintiff alleges that this was one of many occasions on which she had difficulty enrolling in classes. Crenshaw Dep. at 31, 44–52, 60–62. Defendant denies that Plaintiff's supervisors were responsible for this failure to complete Plaintiff's paperwork in a timely manner. Kachadoorian Supp.Decl. ¶ 2.

In August 1994, Plaintiff learned of a job opportunity away from Georgetown that would allow her to attend school full-time while paying her a higher salary. Crenshaw Dep. at 184–86. Plaintiff submitted her letter of resignation on August 11, 1994, effective August 12, 1994. In that letter, Plaintiff stated that she was resigning because she had been offered a position that would enable her to attend school full-time. Def.'s Ex. 2. In her deposition, Plaintiff testified further that this was the only reason that she left Georgetown. Crenshaw Dep. at 187. Plaintiff has since argued that she left because her relationship with Kachadoorian had deteriorated, her working conditions had become intolerable, and she was depressed. Minor Aff. ¶¶ 5–6.

In Plaintiff's Amended Complaint, she claims in relevant part that Defendant retaliated against her because she complained about her supervisor, and that Defendant "created a hostile working environment,

thereby constructively discharging her." [2] Pl.'s Am.Compl. ¶¶ 6(a), 6(c). Plaintiff's claims are before this Court on Defendant's Motion for Summary Judgment.

## II. DISCUSSION

### A. The Standard for Evaluating Motions for Summary Judgment

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party's pleadings must evince the existence of a genuine issue of material fact. *See id.* 477 U.S. at 247–48, 106 S.Ct. 2505. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party. *See id.; Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987). Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. Rather, the nonmoving party bears the affir-mative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial. *See id.* 477 U.S. at 248–49, 106 S.Ct. 2505. The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[3]

### B. Hostile Work Environment

■ In her Complaint, Plaintiff alleged that Defendant's actions created a hostile working environment. The Supreme Court has held that Title VII is violated when "discriminatory conduct [is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295, (1993); *see also Park v. Howard University*, 71 F.3d 904, 906 (D.C.Cir.1995). The requirements of the prima facie case for a claim of hostile work environment based on race are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was subjected to unwelcome racial harassment; (3) that the harassment occurred because of her race; (4) that the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment. *Jones v. Billington*, 12 F.Supp.2d 1, 10–11, 1997 WL 912182 (D.D.C.1997).

Neither Plaintiff's Opposition to Defendant's Motion for Summary Judgment nor her Statement of Genuine Issues addresses

---

2. Defendant treats as abandoned Plaintiff's claim that Defendant "systematically caused the constructive discharge of all African–American employees in the office." Pl.'s Am.Compl. ¶ 6(d); Def.'s Mot.Summ.J. at 21. Plaintiff does not contest this point in her Opposition to Defendant's Motion for Summary Judgment.
 Two claims remain: that Defendant made racially offensive comments, and that Defendant failed to remedy the effects of Plaintiff's discriminatory treatment. Pl.'s Am.Compl. ¶¶ 6(b), 6(e). Neither party addresses these claims in their briefs, therefore the Court will treat them as abandoned. To the extent that Plaintiff's Amended Complaint attempts to state these claims, they are addressed by the Court's discussion of Plaintiff's hostile working environment, constructive discharge, and retaliation claims.

3. Local Rule 108(h) requires both parties to identify with particularity those material facts necessary to support their motions for or in opposition to summary judgment. This Rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C.Cir.1996). Although Plaintiff did submit a Statement of Genuine Issues, ostensibly in accordance with Rule 108(h), the facts therein were not identified with particularity, therefore the Court has considered the facts detailed in the parties' briefs as well as those identified in their 108(h) statements.

the hostile work environment claim. Plaintiff does not dispute defendant's legal arguments, nor does she allege a factual basis for her hostile work environment claim. On this record, the Court finds that the Plaintiff has abandoned this claim, and therefore the Court considers the Plaintiff to have conceded it.[4]

## C. Retaliation

■ To establish a prima facie case of retaliation, Plaintiff must establish "(1) that she engaged in activity protected by the statute; (2) that the employer ... engaged in conduct having an adverse impact on the plaintiff; and (3) that the adverse action was causally related to the plaintiff's exercise of the protected rights." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C.Cir.1988) (citing *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985)); *McKenna v. Weinberger*, 729 F.2d 783, 788, 790 (D.C.Cir.1984). If Plaintiff meets the prima facie case, then, as in other Title VII contexts, Defendant may introduce evidence of a legitimate, non-retaliatory reason for its actions. *See Berger*, 843 F.2d at 1423; *McKenna*, 729 F.2d at 790. Plaintiff then has the burden of persuasion, by a preponderance of the evidence, that the proffered reason is a pretext for retaliation. *See McKenna*, 729 F.2d at 790.

### 1. Protected Activity

Section 704 of the Civil Rights Act of 1964 prohibits retaliation based on the fact that an employee "has opposed any practice [that is an unlawful employment practice], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3 (1994). Defendant does not dispute that Plaintiff's EEOC filing constitutes protected activity, thereby conceding that Plaintiff has estab-

lished the first element of her prima facie case. Def.'s Mot.Summ.J. at 18.

### 2. Causal Link

To demonstrate that a causal connection existed between Plaintiff's protected activity and Defendant's retaliatory acts, Plaintiff need only show that Defendant was aware of her protected activity and that the retaliatory acts took place soon after. *See Mitchell v. Baldrige*, 759 F.2d at 86; *see also McKenna*, 729 F.2d at 791 (causal connection established by knowledge of employee's protected activity closely followed by adverse personnel action). Defendant does not contest that it had knowledge of Plaintiff's EEOC complaint, nor is it disputed that Plaintiff's job duties were changed shortly after she filed her EEOC complaint. Therefore this element of Plaintiff's retaliation claim is also deemed to be conceded.

### 3. Adverse Employment Action

Although this Circuit has lacked the opportunity to define precisely the outer reaches of Title VII's proscriptions, many other circuits have held that "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions ... would form the basis of a discrimination suit." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (quoting *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996)); *see, e.g., Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir.1997) (requiring plaintiffs to present some evidence that allegedly discriminatory actions "constituted a material employment disadvantage"); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."); *Robinson v. City of Pitts-*

---

4. To the extent that Plaintiff has attempted to state a claim for hostile work environment, she has only identified one incident that might be characterized as relevant to a racial harassment claim: Kachadoorian's derogatory comment in May 1993. Crenshaw Dep. at 136–42. This single incident fails as a matter of law to rise to the level of severity required to create an abusive

working environment. *Glovinsky v. Cohen*, 983 F.Supp. 1, 3 (D.D.C.1997) (citing *Harris*, 510 U.S. at 21, 114 S.Ct. 367); *see also Park*, 71 F.3d at 906 ("casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action" for hostile work environment) (quoting *Bundy v. Jackson*, 641 F.2d 934, 943 n. 9 (D.C.Cir.1981)).

*burgh,* 120 F.3d 1286, 1300–01 (3d Cir.1997) (finding that "unsubstantiated oral reprimands" and "unnecessary derogatory comments" that were directed at plaintiff to the exclusion of others similarly situated did not implicate the compensation, terms, conditions, or privileges of employment); *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) (holding that the "employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred"), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 n. 6 (9th Cir.1994) (finding that an employer's decision to transfer one employee instead of another is barely "adverse" where transferred employee was not demoted, or put in a worse job, or given any additional responsibilities).

■ However courts have phrased it, these cases demonstrate that the touchstone in determining whether an employment decision implicates the terms, conditions, or privileges of employment is whether the plaintiff has suffered a materially adverse action that undermines her ability to perform her job satisfactorily or threatens her prospects of future employment. Similarly, other federal courts have held that the loss of status and prestige that an employee suffered when her staff was replaced with less competent individuals did not constitute a sufficiently adverse employment action when her salary and position remained the same, *see Ledergerber v. Stangler,* 122 F.3d 1142 (8th Cir. 1997); the Seventh Circuit rejected a plaintiff's invitation to expand Title VII's definition of terms and conditions when it held that a lateral transfer that changed the employee's title and compelled him to report to a former subordinate may have caused a "bruised ego," but did not rise to an adverse employment action, *see Flaherty v. Gas Research Inst.,* 31 F.3d 451 (7th Cir .1994); the Tenth Circuit has held that it does not constitute an adverse employment action to receive a performance review that is lower than past reviews but within the range of "satisfactory," *see Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 896 (10th Cir.1994); and another circuit has found that Title VII is not implicated when an employer allegedly subjects an employee to "unsubstantiated oral reprimands" and "unnecessary derogatory comments," *see Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1301 (3d Cir.1997).

Plaintiff characterizes various actions taken by Defendant after she filed her EEOC complaint as adverse employment actions. Plaintiff argues that Defendant retaliated against her exercise of protected rights by building a disciplinary file on her for the purpose of terminating her, subjecting her to increased hostility from her supervisor, restructuring her job duties, and obstructing her attempts to take courses. The Court will examine each of these in turn.

### a) The Disciplinary File

■ Plaintiff has offered no admissible evidence to support her contention that her supervisor was building a file on her in order to facilitate terminating her. Plaintiff relies primarily on her own deposition testimony that she had a telephone conversation with Jamie Diliberto, a Georgetown employee, in which Diliberto stated that she had "come across" a file on Plaintiff. Crenshaw Dep. at 134–35, 143. This testimony is pure hearsay and cannot be used to support Plaintiff's prima facie case. *See* Fed. R.Civ.P. 56(e) (requiring that supporting and opposing affidavits be based on personal knowledge or admissible evidence). Plaintiff has also submitted the affidavit of Laura Minor, a co-worker, who states that Plaintiff left Georgetown because of "her discovering that a disciplinary file was being maintained on her." Minor Aff. ¶ 5. Because Minor lacks personal knowledge of the file, her testimony would be inadmissible to prove its existence, and Plaintiff cannot use it to bolster her claim. Absent sworn testimony from Diliberto, or some other individual with personal knowledge that this file actually existed, Plaintiff has not created a genuine issue of material fact that maintenance of the file constituted adverse action by Defendant.

### b) Increased Hostility

■ Plaintiff's only evidence of increased hostility between herself and Kachadoorian

are the vague and conclusory allegations of Plaintiff's co-worker that there was an "overt, palpable, and ugly hostility between [Plaintiff and Kachadoorian]." Minor Aff. ¶¶ 5–6. These allegations are insufficient to raise a genuine issue of material fact on this issue and cannot be used to substantiate Plaintiff's prima facie case.

### c) Job Restructuring

■ After she filed her EEOC complaint, Plaintiff's phone responsibilities were increased and she was asked to resign from certain committees. Crenshaw Dep. at 71–75; Kachadoorian Decl. ¶ 3. Plaintiff also claims that she was not permitted to use students to answer the telephone for her, while other individuals with telephone responsibilities were so accommodated. Crenshaw Dep. at 70. Defendant maintains that Plaintiff was told to limit her use of student subs, but never to forgo the practice altogether. Kachadoorian Supp.Decl. ¶ 3. Plaintiff would also like to claim that she was stripped of her event and meal planning duties, but this allegation conflicts directly with her own deposition testimony that this change occurred well before her EEOC complaint, therefore the Court will not consider it. See Pl.'s Ex. 1 at 2; Crenshaw Dep. at 80–83.

Assuming that Plaintiff's version of the facts accurately reflects the changes made to her job responsibilities, they do not amount to "material employment disadvantage." See Manning, 127 F.3d at 692. Plaintiff has not shown that these changes resulted in any detriment to her, other than the fact that she did not like answering the telephone. Pl.'s Opp'n at 10. The changes had no impact on Plaintiff's salary. See Milburn, 854 F.Supp. at 14 (finding that defendant's acts were not "ultimately adverse to [plaintiff]" because they had no effect on plaintiff's bonus). "Marginal distinctions with uncertain consequences are not 'adverse action' for the purposes of Title VII." Id.

■ Even if these changes did constitute adverse action, Plaintiff must still contend with Defendant's legitimate business reason for its actions. Defendant has identified credible evidence, including Plaintiff's own sworn deposition testimony, that Plaintiff's job was restructured in response to widespread complaints about telephone coverage in the office where Plaintiff worked. Crenshaw Dep. at 71–75; Kachadoorian Decl. ¶ 3. In response to Plaintiff's allegation that she was forbidden to use students to answer the telephone for her, Defendant maintains that it was reasonable to expect Plaintiff not to delegate her primary responsibility to others, particularly in light of the fact that the office in which Plaintiff worked had a greater degree of telephone interaction with those outside the University community than other offices. Kachadoorian Supp.Decl. ¶ 3.

In rebuttal, Plaintiff maintains that the changes were taken in direct response to her EEOC filing, but other than the proximity in time between the two events, Plaintiff has offered no evidence to support this claim. "Mere coincidence does not establish causation." Milburn, 854 F.Supp. at 14. Because Plaintiff has failed to show that Defendant's legitimate, non-retaliatory reasons for restructuring her job duties were pretextual, her retaliation claim cannot stand on these grounds.

### d) Obstruction of Course Work

■ As a fourth and final basis for her retaliation claim, Plaintiff alleges generally that during some semesters, she encountered difficulty taking classes. Minor Aff. ¶ 7. The only specific incident that she documents occurred shortly before she resigned, when she discovered that certain necessary paperwork had not been completed in time for her to enroll in classes for fall 1994. Defendant does not contest that the paperwork was not completed, but denies that Plaintiff's supervisors were in any way responsible for the delay, as such paperwork is routinely handled outside the office. Kachadoorian Supp. Decl. ¶ 2. Defendant also highlights Plaintiff's own testimony that the paperwork in question related to changes in Plaintiff's job classification, which were being made at Plaintiff's request. In response to these legitimate, non-retaliatory explanations for Defendant's failure to complete the paperwork, Plaintiff has offered no proof that her supervisors interfered or attempted to interfere

with the processing of this paperwork. Lacking any genuine facts to rebut Defendant's explanation, Plaintiff's retaliation claim once again must fail.

After careful examination of the evidence presented by both parties, this Court must conclude that Plaintiff has failed to identify any genuine factual issues to support her prima facie case with respect to the disciplinary file or the increased hostility of her supervisor. As for her claim that Defendant restructured her job, Plaintiff has not demonstrated that this action was genuinely adverse, nor has she offered any facts to rebut Defendant's legitimate, non-retaliatory justifications. With respect to Plaintiff's claim that Defendant obstructed her course work, Plaintiff has not identified any facts to rebut defendant's legitimate non-discriminatory reasons for why Plaintiff was unable to take courses in fall 1994. Because Plaintiff has not met her burden of proof with respect to the adverse action element of her retaliation claim, summary judgment is granted on this claim.[5]

## D. Constructive Discharge

 To establish a prima facie case of constructive discharge, Plaintiff must show "that the employer deliberately made working conditions intolerable and drove her into an involuntary resignation." *Downey v. Isaac,* 622 F.Supp. 1125, 1132 (D.D.C.1985); *Clark v. Marsh,* 665 F.2d 1168, 1173 (D.C.Cir.1981). Not only must plaintiff demonstrate that there was intentional discrimination, but plaintiff must also establish the presence of "aggravating factors." *Dashnaw v. Pena,* 12 F.3d 1112, 1115 (D.C.Cir.1994); *Clark,* 665 F.2d at 1174. Absent evidence with respect to each of these elements, Plaintiff's claim that she was constructively discharged "must fail." *Beckwith v. Career Blazers Learning Ctr. of Wash., D.C.,* 946 F.Supp. 1035, 1052 (D.D.C.1996).

### 1. Intentional Discrimination

To the extent that Plaintiff's proof of intentional discrimination rested on the same grounds as her hostile working environment claim, the Court has concluded that Plaintiff has conceded or abandoned this claim. To the extent that Plaintiff's proof depends on the circumstances underlying her retaliation claim, the Court has found that claim to be without merit. Although Plaintiff has alleged no additional genuine facts to substantiate this element of her constructive discharge claim, the Court will examine whether or not aggravating factors were present.

### 2. Aggravating Factors

In her Opposition to Defendant's Motion for Summary Judgment, Plaintiff makes two arguments that the circumstances surrounding her departure from Georgetown constitute aggravating factors sufficient to withstand Defendant's motion. First, she argues that because Defendant was building a disciplinary file on her and her supervisor was increasingly hostile toward her, she was reasonably certain that Defendant was preparing to fire her. Pl.'s Opp'n at 5–6. Second, she argues that this Court should give preclusive effect to the Office of Unemployment Compensation Appeals Examiner's conclusion of law that she was constructively discharged, or, in the alternative, that findings of fact contained in the Examiner's report (Pl.'s Ex. 1.) create a genuine issue of material fact that she was constructively discharged. *Id.* at 6–8.

### a) Reasonable Certainty That One's Career Has Reached Its End

Plaintiff's first argument is that her supervisor's hostility toward her, "coupled with her knowledge that a removal case was being built against her, are more than sufficient to demonstrate constructive discharge." Pl.'s Opp'n at 6. Plaintiff relies on this Circuit's decision in *Hopkins v. Price Waterhouse,* 825 F.2d 458 (D.C.Cir.1987), *rev'd on other*

---

5. In her Opposition to Defendant's Motion for Summary Judgment, Plaintiff states that she is "hampered by the absence of discovery" in her efforts to demonstrate pretext on this issue. Pl.'s Opp'n at 10. Having consented to a stay on her Motion to Compel Discovery pending resolution of Defendant's Motion for Summary Judgment, Plaintiff is foreclosed from complaining that she lacks adequate discovery to oppose Defendant's motion. *See Crenshaw v. Georgetown,* Civil Action No. 97–0063, Order, June 4, 1998 (Robinson, M.J.).

*grounds,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), to support her claim that "[r]easonable certainty that one's career has reached its end" satisfies the aggravating factor requirement. Pl.'s Opp'n at 6.

Plaintiff's subjective belief that her tenure has become intolerable is insufficient to support a claim for constructive discharge. *See Downey,* 622 F.Supp. at 1132. Unlike the plaintiff in *Hopkins,* who had been formally denied partnership at the accounting firm where she was employed, 825 F.2d at 472, Plaintiff has only offered her own speculation and conjecture that Defendant wished to terminate her. Once again, Plaintiff presents the Court with a co-worker's conclusory affidavit attesting to hostility between Kachadoorian and Plaintiff, and Plaintiff's inadmissible hearsay evidence that Defendant was maintaining a disciplinary file on her, neither of which are competent to raise a genuine issue as to whether Plaintiff's termination was imminent.[6]

### b) The Decision of the Appeals Examiner

D.C.Code § 46–112(j) states in relevant part:

> Any finding of fact or law, determination, judgment, conclusion, or final order made by a[n] ... appeals examiner ... shall not be conclusive or binding in any separate or subsequent action or proceeding between an individual and his present or prior employer brought before an arbitrator, court, or judge of the District of Columbia or the United States.

D.C.Code Ann. § 46–112(j) (1996). This section flatly refutes Plaintiff's contention that the Examiner's conclusions of law or findings of fact should be accorded preclusive effect in this Court.[7]

### 3. Involuntary Resignation

Even if these events would be sufficient to raise a genuine issue of material fact as to

whether or not Defendant made Plaintiff's working conditions so intolerable that a reasonable person would have resigned, Plaintiff must still rebut Defendant's evidence that her decision to resign was not causally related to the terms and conditions of her employment with Georgetown. Defendant maintains that Plaintiff quit voluntarily, relying primarily on Plaintiff's own deposition testimony, in which she stated that the only reason she left Georgetown was to take a better job. Crenshaw Dep. at 187. Plaintiff also testified that but for this more attractive offer from another employer, she would have remained at Georgetown for the "foreseeable future." *Id.* at 190–91; Pl.'s Statement of Genuine Facts ¶ 4. Plaintiff attempts to challenge this characterization of her testimony, relying on the Examiner's report and her co-worker's affidavit. Pl.'s Statement of Genuine Facts ¶ 4. As discussed earlier, neither of these suffices to create a genuine issue of material fact. Because Plaintiff has failed to carry her burden of proof as to any of the elements of the constructive discharge claim, the Court grants summary judgment for Defendant.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in full.

---

6. In Defendant's Reply in Support of its Motion for Summary Judgment, Defendant argues that "plaintiff's speculative assertion that she believed she would be terminated is negated by the fact that Georgetown renewed plaintiff's contract less than six weeks before she resigned." Def.'s Reply at 4. Defendant does not cite to any docu-

mentary or other evidence to support this assertion, therefore the Court will not consider it.

7. Subsection (j) was added to § 46–112 in 1993. *See* D.C.Law 9–408, § 107, 40 D.C.Reg. 1007, 1020 (1993).