**Samuel E. FORKKIO, Plaintiff,**

**v.**

**Donna TANOUE, in her capacity as Chairman, Federal Deposit Insurance Corporation, Defendant.**

**No. CIV. A. 98–00609 ESH.**

United States District Court, District of Columbia.

Feb. 16, 2001.

Janet A. Vecchia, Washington, DC, for Plaintiffs.

Kirk K. Van Tine, Kelly R. Donovan, Baker Botts LLP, Thomas J. Sarisky, Counsel, Federal Deposit Insurance Corporation, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's motion for summary judgment, plaintiff's opposition thereto, and defendant's reply. Plaintiff Samuel Forkkio was employed by FDIC in June 1996 in a temporary Grade 15 position when his section was combined with another section as a unit as part of a reorganization. Plaintiff filed an EEOC complaint in August 1996 based on this action. Plaintiff's temporary Grade 15 position subsequently reverted to a permanent Grade 14 position. Plaintiff claims that the elimination of his section and the reversion of his temporary position constitute discrimination. Plaintiff further alleges that the reversion of his temporary position and other matters constitute retaliation for his EEOC complaints. Defendant Donna Tanoue, in her capacity as Chairman of the Federal Deposit Insurance Company ("FDIC"), moves for summary judgment on the grounds that plaintiff has failed to establish a prima facie case of either discrimination or retaliation under Title VII. Upon consideration of the pleadings and the record before us, this Court concludes that plaintiff cannot prevail as a matter of law and therefore summary judgment is granted as to all counts.

## BACKGROUND

Plaintiff Samuel Forkkio was employed by the FDIC Division of Finance ("DOF") as "Chief, Insurance Funds Accounting Policy Unit," a permanent Grade 14 position, from 1991 until August 1993. (Def.St.¶¶ 1–2.) In August 1993, plaintiff received a temporary Grade 15 promotion to a position as "Chief, Accounting and Tax Policy Section" ("ATP"). (Def.St.¶ 2.) This temporary promotion was initially set

to expire on August 7, 1994, but was extended twice to be effective until January 4, 1997. (*Id.*) As part of a DOF reorganization in June 1996, the ATP section was added to another section within DOF, and its employees were reorganized into a "unit" within that section. (Def.St.¶ 3.) After the reorganization, plaintiff's grade remained a temporary Grade 15 and he continued to supervise the accounting and tax policy staff. (Pl.St.¶¶ 5, 16.) Plaintiff initiated an EEOC complaint in August 1996. (Def.St.¶ 9.) On January 4, 1997, plaintiff's temporary Grade 15 promotion expired and he reverted to a permanent Grade 14 position. (Def.St.¶ 4.) His position title was changed from "Chief, Accounting and Tax Policy" to "Senior Accountant." (Def.Ex. 4.) Neither his salary nor his job responsibilities were reduced. (Def.St.¶ 5.) Plaintiff claims that this was a retaliatory demotion.

By December 1996, it was determined that the ATP unit would be reinstated as a separate section within DOF. (Def.St.¶ 6.) A vacancy announcement was posted on December 20, 1996, for a temporary Grade 15 position of chief of the ATP section. (*Id.*) Plaintiff did not apply for that position. (*Id.*) On February 11, 1997, the FDIC reposted the chief of the ATP section position as a permanent Grade 15 position. (Def.St.¶ 7.) Plaintiff applied and was promoted to the position effective April 13, 1997. (*Id.*) Plaintiff alleges that additional acts of retaliation occurred after his promotion to section chief.

## LEGAL ANALYSIS

### I. Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–250, 106 S.Ct. 2505 (citations omitted).

### II. Discrimination

In order to state a prima facie case of discrimination under Title VII, plaintiff must establish: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Brody*, 199 F.3d at 457. "Mere idiosyncrasies of personal preference are not sufficient to create an injury." *Id.See also Jones v. Billington*, 12 F.Supp.2d 1, 13 (D.D.C.1997) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.") (citation and quotation marks omitted), *aff'd without op.*, 1998 WL 389101

(D.C.Cir. June 30, 1998). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA*, 102 F.Supp.2d 24, 29 (D.D.C. 2000) (citation and quotation marks omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268–69, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Plaintiff argues that both the June 1996 reorganization and elimination of his position as section chief and his January 1997 reversion to a permanent Grade 14 position constitute discriminatory adverse actions.

A. June 1996 Reorganization

The June 1996 reorganization resulted in the ATP section being added to another section within DOF, and the reorganization of its employees into a "unit" within that section. (Def.St.¶ 3.) Plaintiff lost the title of section chief when his section no longer existed. After the reorganization, plaintiff's grade remained a temporary Grade 15, his substantive responsibilities were not reduced, and he received a salary increase within three months of the reorganization. (Pl. St. ¶ 14; Def. Ex. 2, 3.) Plaintiff was given an additional function to perform relating to tax operations, continued to supervise members of his former staff, and was assigned additional staff. (Pl.St.¶¶ 15–16.) After the reorganization, plaintiff reported to his former colleague, Clifton Ford, an African–American section chief. (Pl.St.¶ 10.) Plaintiff claims that he was demoted to an unknown

position (Pl.St.¶ 9), and that he no longer participated in DOF weekly management meetings or received e-mail and other communications regarding DOF management issues that section chiefs continued to participate in and receive. (Pl.St.¶¶ 17–18.) [1]

■ The changes in plaintiff's circumstances after the reorganization do not constitute an adverse action. In *Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir.1994), the court found that plaintiff's change in title from principal scientist to senior project manager coupled with a new reporting relationship that required plaintiff to report to a former subordinate who was a manager rather than the senior vice president, whom plaintiff had formerly reported to, was not an adverse action. The court found that

"[T]hose changes are largely semantic where the employee's salary, benefits, and level of responsibility would remain unchanged. Although the reporting relationship may have bruised Flaherty's ego, ... a plaintiff's perception that a lateral transfer would be personally humiliating is insufficient, absent other evidence, to establish a materially adverse employment action. Moreover, ... the loss of an existing title also would not satisfy this element of the prima facie case. Because a change in title would often go hand in hand with a new reporting relationship, the two together have little or no cumulative effect."

*Id.* (citations omitted). *See also Crady v. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993) ("[Plaintiff] would have maintained a management-level position at the same salary and benefits he was already receiving. Although his responsibilities changed, he does not show that they were less signifi-

---

1. Plaintiff's claim that no one told him his new position title after the reorganization does not mean that his position was "unknown." The personnel action paperwork at the time of the reversion listed his current position as of January 1997 as "Chief, Ac-

counting and Tax Policy." (Def.Ex. 4.) It is undisputed that he continued to perform the same work and supervise the same staff. Whether or not he was told that his new title was "unit chief," the evidence is undisputed that he was the head of the ATP unit.

cant than the responsibilities he previously enjoyed ... [The loss of the] assistant vice president ... [title] alone is not enough to constitute a materially adverse employment action."); *Childers v. Slater*, 44 F.Supp.2d 8, 21 (D.D.C.1999) ("Courts have held that reassignment within a division, without demotion or corresponding reduction in salary or benefits does not constitute adverse action.... The plaintiff does not offer any evidence to suggest that her reassignment from an international program manager to the project leader ... had any corresponding negative effect on her salary, benefits, responsibilities, stature or otherwise. Thus, she has not established that the reassignment constituted an adverse action.") (citations omitted).

Applying these principles to this case, this Court is of the opinion that the change in plaintiff's title and reporting relationship due to the fact that the ATP section was reorganized as a unit does not constitute an adverse action. Plaintiff suffered no decrease in salary or benefits and maintained the same substantive and supervisory responsibilities he had before the reorganization. Plaintiff's own belief that the reassignment was a "demotion" and was accompanied by a loss in stature or prestige is insufficient to render it otherwise. *See Flaherty*, 31 F.3d at 457 ("[A] plaintiff's perception that a lateral transfer would be personally humiliating is insufficient, absent other evidence, to establish a materially adverse employment action."); *Bialczak v. State*, 2000 WL 1888789 at *2 (6th Cir. Dec. 22, 2000) ("While [plaintiff] repeatedly states that these actions denigrated his credibility and reputation, he presents no evidence to demonstrate such harm. Thus, this court affirms the district court's grant of summary judgment as [plaintiff] failed to present a prima facie

case of retaliation."); *Mudholkar v. University of Rochester*, 2000 WL 1476576 at *2 (2d Cir. Oct.4, 2000) ("[Plaintiff] appears to argue that he suffered some sort of diminution in prestige by virtue of his transition from the 'Statistics Department' to the 'Program in Statistics.' But he has failed to make any showing of materiality, because he has offered no evidence, save his own unsupported, conclusory statements, that his new position is any less prestigious or that his duties have been significantly altered.").[2]

Plaintiff argues the additional facts that he no longer participated in communications related to DOF management issues and was given additional responsibility and additional staff to supervise. The Court cannot say that these changes were significant enough to rise to the level of "materially adverse consequences." *Brody*, 199 F.3d at 457. "[T]he touchstone in determining whether an employment decision implicates the terms, conditions, or privileges of employment is whether the plaintiff has suffered a materially adverse action that undermines h[is] ability to perform h[is] job satisfactorily or threatens h[is] prospects of future employment." *Crenshaw v. Georgetown Univ.*, 23 F.Supp.2d 11, 17 (D.D.C.1998), *aff'd without op.*, 1999 WL 730808 (D.C.Cir. Aug.13, 1999). *See also Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999) ("[R]eassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on h[im]."); *Crady*, 993 F.2d at 136 ("[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities."); *Bialczak*, 2000 WL 1888789 at *2 ("Reassignments without salary or work hour changes do not ordinarily con-

2. Plaintiff claims that his subordinates asked him whether he had been demoted when he was listed on a phone list circulated after the 1996 reorganization as a senior accountant. (Opp. at 25.) There is no evidence, and plaintiff does not argue, that he was made a senior

accountant after the 1996 reorganization. That he apparently was listed in error as a senior accountant and was asked about that listing by his subordinates does not render his reassignment an adverse action.

stitute adverse employment decisions in employment discrimination claims.... For an employment action to be materially adverse, it must significantly diminish one's material responsibilities.") (citations and quotation marks omitted); *Mudholkar*, 2000 WL 1476576 at *3 ("In this case, [plaintiff] 'has not produced evidence to show that the [reorganization] was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement.'") (citation and quotation marks omitted). There is simply no evidence that after the reorganization plaintiff was somehow hampered in his ability to do his job, or that the fact he no longer participated in communications related to management issues at DOF materially diminished his responsibilities or otherwise had a detrimental effect on his career. Indeed, plaintiff continued to supervise his former staff and was assigned additional staff along with the added responsibilities relating to tax operations. (Pl.St.¶¶ 15–16.)[3] Moreover, the fact that the reorganization and attendant changes did not threaten plaintiff's prospects of future employment is evidenced by the fact that less than three months after the reorganization, plaintiff received an increase in salary and less than one year later, plaintiff was promoted to a permanent Grade 15 position as section chief of the reformed ATP section. Plaintiff's conclusory argument that "[o]bviously ... his career was in jeopardy" (Opp. at 23) is thus contradicted by the undisputed evidence.[4]

The cases cited by plaintiff in support of his argument are distinguishable. In *Bryson v. Chicago State University*, 96 F.3d 912, 916 (7th Cir.1996), plaintiff, a female tenured professor, alleged that she lost her title "Special Assistant to the Dean" and was removed from the three university committees she had served on for refusing the unwanted sexual advances of a superior. Plaintiff presented evidence that both the title and the committee work were important to the advancement of her career and were important preludes to an administrative career for which she had been on track before the alleged retaliation. *Id.* Because plaintiff had offered evidence that these changes were tangible losses that adversely affected her career, there was a question of fact as to whether the actions had been adverse. *Id.* Similarly, in *de la Cruz v. New York City Human Resources Admin.*, 82 F.3d 16, 21 (2d Cir. 1996), although the court found that his case was "quite thin," plaintiff had nonetheless established a prima facie case because he had presented evidence that his transfer was from a unit that offered opportunity for advancement to one that had little prestige and opportunity for advancement. *See also Jones v. School District of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999) (teacher who had two involuntary transfers to new schools where he lost opportunity to teach physics and had to teach at a school which was known as "difficult" has established prima facie case). These cases establish that a transfer or change in title or position can be adverse even in the absence of a change in salary or benefits *if* it has materially adverse consequences or negatively impacts one's future employment opportunities. But that is not the case here, for plaintiff has failed to provide any evidence, beyond his conclusory assertions of loss of prestige, of any adverse consequence to his position or future career, especially in light of his promotion to a permanent grade 15

---

**3.** The fact that a unit chief that used to report to plaintiff was transferred out of the unit (Opp.22–23) did not significantly alter plaintiff's supervisory authority, as it is undisputed that plaintiff continued to supervise both his former staff and his newly assigned staff and retained substantive authority over tax and accounting policy for DOF.

**4.** Plaintiff also argues that this claim could be viewed as a "failure to reassign" plaintiff to his former post. (Opp. at 23.) Plaintiff's former position no longer existed in 1996, so the fact that he was not reassigned to it cannot constitute an adverse action.

section chief position less than one year later.

■ Moreover, the Court finds that the reassignment does not give rise to an inference of discrimination. The white temporary Grade 15 section chiefs who were promoted to permanent Grade 15 section chief positions after the reorganization were not similarly situated to plaintiff.[5] Their sections had not been eliminated or reformed as units. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999) ("A plaintiff must ... demonstrate that all of the relevant aspects of her employment situation were nearly identical to those" of the comparators) (citation omitted). That they kept their positions when their positions were not eliminated is of no relevance to plaintiff's situation. Further, plaintiff's reliance on *Jones v. Frank*, 142 F.R.D. 1 (D.D.C.1992), is misplaced. In *Jones*, the plaintiff, an African–American female, presented evidence that when her position was abolished and she was reassigned, other white males *whose jobs had also been eliminated* were treated more favorably in their reassignments. The court found that this created an inference of discrimination and a triable issue of fact. *Id.* at 2. Here, the white section chiefs who retained their positions were not similarly situated to plaintiff as their sections were not reconfigured as part of the reorganization.

### B. January 1997 Reversion

On January 4, 1997, plaintiff's temporary Grade 15 promotion expired and he reverted to a permanent Grade 14 position.

(Def.St.¶ 4.) His title was changed from "Chief, Accounting and Tax Policy" to "Senior Accountant." (Def.Ex. 4.) Before the reversion, it was decided that the ATP unit would be reconstituted as a section once again. (Def.St.¶ 6.) In December 1996, the position of section chief of ATP was posted as a temporary Grade 15 position for which plaintiff did not apply. (*Id.*)

■ The reversion to a Grade 14 position is not an adverse action. Plaintiff's promotion to the Grade 15 section chief position was temporary. (Def.St.¶ 2.) While it was extended twice, it remained a temporary promotion. (*Id.*) When it expired by its terms and plaintiff was reverted to his previous permanent Grade 14, plaintiff did not lose a term or condition of employment to which he had anything but a temporary entitlement. Plaintiff's plight was comparable to that of the plaintiff in *Atkins v. Boeing Co.*, 1993 WL 186170 (D.Kan. May 5, 1993), *aff'd*, 1994 WL 274066 (10th Cir. June 14, 1994), where the court found that plaintiff had failed to establish that he had suffered an adverse action under Title VII when a temporary grade promotion expired and he reverted to his previous grade. The court explained:

> The facts are undisputed that [plaintiff] was temporarily assigned to a Boeing facility in Louisiana ... [and] received a temporary upgrade from Grade 4 to Grade 6 during this time. Upon his return to Wichita, he returned to his previous classification of Grade 4. Ac-

---

**5.** Plaintiff also argues that as part of the June 1996 reorganization, plaintiff's section was the only section to be eliminated and he was the only section chief to lose his title. However, another African–American section chief, Clifton Ford, retained his title and position as section chief after the reorganization. (Pl. St. ¶¶ 8, 10; Pl.Ex. 38 (Ford Dep. at 15).) Since plaintiff's section was the only section that was reconstituted as a unit, it is true that no white section chief lost the title of section chief. However, the fact that an African–American section chief was retained as section chief undermines the inference that plaintiff's section was reformed as a unit and

his title was eliminated because he is African–American. *See Ramsey v. Derwinski*, 787 F.Supp. 8, 11 (D.D.C.1992) ("Plaintiff's nonselection must be viewed in the context of the hiring for all four positions. In addition to the black man who was selected for the specific position plaintiff sought, a black woman, a white man and a black man were selected. That fact virtually eliminates any inference of discrimination on the basis of sex or race."). *See also Brody*, 199 F.3d at 451 ("[T]he district court correctly observed that any sexual discrimination claim would be baseless because two of the three employees selected for the transfer were women.").

cording to the terms of the collective bargaining agreement between Boeing and the Union, an employee who was temporarily promoted returned to their previous job classification at the conclusion of their temporary promotion. Thus, [plaintiff's] classification of Grade 4 upon his return to Wichita from Louisiana cannot be considered an adverse employment action.

*Id.* at *7. In affirming, the Tenth Circuit stated that "[w]ith regard to plaintiff's demotion claim the district court accurately concluded that plaintiff failed to offer any evidence that he 'suffered an adverse employment action.'" *Atkins v. Boeing Co.*, 1994 WL 274066 (10th Cir. June 14, 1994) (citation omitted). *See also Brown v. New York City Health & Hosp. Corp.*, 1996 WL 68558 at *3 (E.D.N.Y. Feb.5, 1996) (finding, on motion for preliminary injunction, that it was "considerably unlikely" that plaintiffs could prevail on merits of a § 1983 discrimination claim where plaintiffs were demoted from temporary promotions). When plaintiff reverted to his previous permanent Grade 14, not only were his salary and benefits not reduced, he received a pay increase. (Def. Ex. 3 and 4.) It is undisputed that after the reversion, plaintiff continued to perform the same work. (Def.St.¶ 5.) When plaintiff's temporary promotion expired and he reverted to a permanent Grade 14, he did not apply for the position of section chief. Given these circumstances, the assignment of the title senior accountant upon the expiration of plaintiff's temporary promotion and the reversion to his permanent Grade 14 was not an adverse action.

To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Brody*, 199 F.3d at 457. There is no evidence that plaintiff's change in title to senior accountant was accompanied by any material change in his benefits, salary, or responsibilities, or "undermine[d] h[is] ability to perform h[is] job satisfactorily or threaten[ed] h[is] prospects of future employment." *Crenshaw*, 23 F.Supp.2d at 17. As plaintiff was named acting ATP section chief in February 1997, he had the title of senior accountant for only a matter of weeks. (Pl.Ex. 34 (Forkkio Aff. ¶ 6).) In just over three months, plaintiff was promoted to the permanent Grade 15 position of ATP section chief. (Def. St. ¶ 7.)

Nor does the reversion or change in title under these circumstances raise an inference of discrimination. Plaintiff reverted to his permanent grade and was given a change in title at a time when he had not applied for the position of section chief, and the ATP unit that he had been supervising was being reformed as a section. The position he had been in was not going to exist when ATP became a section, and he did not apply for the supervisory position that would replace it. Therefore, the fact that defendant assigned him the title of senior accountant does not raise an inference of discrimination. Plaintiff argues that no other section chief in a temporary Grade 15 position reverted to their previous permanent grade.[6] However, all the other temporary section chiefs had applied for and were selected for their section chief positions at Grade 15 before their temporary promotions expired. Plaintiff did not do so until after he had reverted. The section chief position was posted as a temporary Grade 15 position in December 1996. While plaintiff may have declined to apply for that position because he did not want a temporary Grade 15 position, that was plaintiff's choice. It does not raise an inference of discrimination on the part of the defendant. When plaintiff was hired as ATP section chief in 1997, he received

---

6. However, following the reorganization, at least 16 other DOF employees, including 14 white employees, reverted back to their original permanent grade from temporary grade positions. (Def.Ex. 12.)

the same permanent Grade 15 promotion that the others had received.

Because plaintiff cannot establish that the June 1996 reorganization or the January 1997 reversion constitute adverse actions or give rise to an inference of discrimination, plaintiff has failed to establish a prima facie case of discrimination.[7] Accordingly, the Court will grant summary judgment on plaintiff's discrimination claims.

## III. Retaliation

■ Plaintiff also contends that he was retaliated against for his August 1996 EEOC complaint alleging discrimination with respect to the reorganization and for subsequent EEOC protected activity. In order to establish a prima facie case of retaliation, plaintiff must demonstrate: (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. *Brody*, 199 F.3d at 452.

■ The first claimed retaliatory action is plaintiff's January 1997 reversion to the permanent Grade 14 position of senior accountant. For the reasons discussed above, this is not an adverse action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Brody*, 199 F.3d at 457.[8] Moreover, the fact that the reversion automatically followed the expiration of plaintiff's temporary promotion eliminates the

allegation of a causal relationship between plaintiff's August 1996 complaint and the reversion.[9] Therefore, plaintiff has failed to allege a prima facie case of retaliation with respect to that event.

■ The second alleged retaliatory action is the assignment of Mr. Russell Cherry as plaintiff's supervisor in early 1997. Plaintiff has presented no evidence that the assignment of Mr. Cherry had "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Id.* Even if Mr. Forkkio did not like Mr. Cherry, or the way he performed his role as supervisor, this does not render this an adverse action. *See id.* ("Mere idiosyncrasies of personal preference are not sufficient to create an injury"); *Billington*, 12 F.Supp.2d at 13 ("[N]ot everything that makes an employee unhappy is an actionable adverse action.") (citation omitted). Moreover, plaintiff has failed to establish a causal relationship between his EEOC complaint and the assignment, as there is no evidence that Mr. Cherry was assigned to be plaintiff's supervisor "shortly after th[e protected] activity" by an individual who "had knowledge of the protected activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985).[10]

Plaintiff alleges that Mr. Cherry engaged in a series of retaliatory acts after he filed his EEOC complaints in August 1996, May 1997, June 1997, and October 1997.[11] These alleged acts are (1) the

---

7. Because plaintiff has not established a prima facie case, the Court does not need to address the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and plaintiff's allegations of a pattern and history of racial discrimination, as well as his contentions as to pretext, are totally irrelevant.

8. Plaintiff's attempt to establish an adverse action by alleging disparate treatment are unavailing, as these are two separate elements of the prima facie case.

9. In addition, there is no evidence that the change in title was caused by the EEOC complaint, as opposed to the reversion.

10. Mr. Anderson's opinion that Mr. Cherry has problems supervising black employees is similarly insufficient to establish that his assignment as plaintiff's supervisor is an adverse action.

11. The first, an incident where Mr. Cherry allegedly asked one of plaintiff's subordinates about the functions of plaintiff's section, rather than discuss it directly with plaintiff, predated plaintiff's first EEOC complaint filed in August 1996. (Def.St.¶ 8.) Not only is this not an adverse action, it bears no causal relationship to the protected activity. However, plaintiff claims that this treatment continued, and worsened, after the first EEOC complaint, and therefore the Court will address

transfer of a staff member in spring 1997 to work for another section chief, arranged by Mr. Cherry and a member of plaintiff's staff; (2) Mr. Cherry arranged to post a position for a Grade 14 Senior Tax Accountant for plaintiff's staff, without consulting plaintiff, who preferred to hire an accountant for the accounting side; (3) Mr. Cherry sent a "Congratulations on Selection" e-mail in April 1997 to plaintiff, copied to two colleagues and plaintiff's secretary, that plaintiff claims implies he has performance problems;[12] (4) Mr. Cherry sent an e-mail asking about several administrative reports, including one he said was not received on time, and asking for a description of plaintiff's managerial duties; (5) Mr. Cherry sent another e-mail requesting updates on certain issues; (6) Mr. Cherry, who was the selecting official for a senior accountant position, wanted to interview all of the candidates rather than simply hire the candidate recommended by plaintiff; (7) Mr. Cherry gave an award to a member of plaintiff's staff without consulting plaintiff.

Plaintiff has presented no evidence that any one of these actions had "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Brody*, 199 F.3d at 457.[13] Nor did the totality of these actions create a "severe or pervasive ... harassing or retaliatory environment" that a reasonable person would find hostile or abusive. *Hayes v. Shalala*, 902 F.Supp. 259, 267 (D.D.C.1995).[14] Plaintiff argues that every perceived slight, imagined or real, is retaliation by Mr. Cherry. But "[t]he federal courts

cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct." *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.Cir.1997). Mr. Cherry was plaintiff's supervisor. The essence of plaintiff's complaint is that he did not appreciate Mr. Cherry's method of supervision. However plaintiff's personal preference or unhappiness alone is utterly insufficient to establish an adverse action. Not only do these actions not rise to the level of adverse actions, they are precisely the kind of "minor and even trivial employment actions" that are not properly the subject of Title VII discrimination suits. *Crenshaw*, 23 F.Supp.2d at 16 (citation omitted). Because plaintiff has failed to establish a prima facie case of retaliation, the Court will grant summary judgment to defendant on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to establish a prima facie case with respect to either race discrimination or retaliation. Accordingly, defendant's motion for summary judgment is granted.

---

plaintiff's additional allegations of retaliatory actions herein.

**12.** Plaintiff's claim that this e-mail is critical, let alone a personal "attack" on plaintiff (Opp. at 41), is an unreasonable and unsupportable reading of the e-mail.

**13.** "A reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action." *Childers*, 44 F.Supp.2d at 20 ("words that wound but have no affect on employment matters" are not adverse ac-

tions). Moreover, even if certain criticism was not justified, "[f]alse accusations without negative employment consequences are not employment decisions actionable under Title VII." *Id.*

**14.** While plaintiff asserts that he is not claiming hostile environment or retaliatory harassment, he argues that the alleged adverse actions should be viewed in their totality, citing *Hayes*, which addresses retaliatory harassment. (Opp. at 34–35.)