Denise SAVARESE, Plaintiff,

v.

**WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK and Kevin Harty, Defendants.**

No. 04–CV–3856 (ADS)(JO).

United States District Court, E.D. New York.

Feb. 27, 2006.

Leeds Morelli & Brown, P.C. by Rick Ostrove, Esq., Carle Place, NY, for Plaintiff.

Bleakley, Platt & Schmidt by Robert D. Meade, Esq., White Plains, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This employment discrimination lawsuit arises from the claims of Denise Savarese

(the "plaintiff") that her former employer William Penn Life Insurance Company of New York ("William Penn") and Kevin Harty (collectively, the "defendants") discriminated against her because of her gender, age, and marital status in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the New York State Executive Law, Human Rights Law ("NYSHRL"), § 290 et seq. Originally, the complaint also alleged causes of action for a hostile work environment and constructive discharge. These causes of action were withdrawn by the plaintiff in their opposition to the instant application.

Presently before the Court is the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") for summary judgment dismissing the complaint. In support of their motion, the defendants have submitted the affidavits of Kevin Harty ("Harty Aff.") with annexed Exhibits A and B; and Mary Beth Dziomba ("Dziomba Aff."), and the reply affidavit of Phil Muskatt ("Muskatt Aff.") with annexed Exhibits A to E. Harty, a defendant in this action, is the Senior Vice President and Chief Marketing Officer of William Penn. In this capacity Harty manages the Marketing Department at William Penn. Muskatt is a Vice President of Marketing. Dziomba is the "Director of Agencies."

In opposition to the defendants' motion, the plaintiff has submitted only the affidavit of Denise Savarese ("Savarese Aff.").

## I. BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements, the affidavits submitted, and the annexed exhibits. The plaintiff is a forty-one year old married woman. She began working for William Penn in October, 1981 and has held various clerical positions since that time. In February, 1997, the plaintiff became a "Marketing Coordinator." At William Penn, Marketing Coordinators are assigned to certain geographic territories, within which there are "General Agencies." The parties dispute the role and duties of a Marketing Coordinator and the nature of the General Agencies. The disagreement between the parties in this regard is discussed more fully below. However, it can fairly be said that a Marketing Coordinator acts as a liaison between the General Agencies and William Penn's home office. William Penn contracts with the General Agents to deal locally with insurance brokers in various markets. In turn, the insurance brokers sell individual insurance policies to the public. The job of a Marketing Coordinator is to assist the General Agents in performing their task effectively and efficiently. In their role as liaisons, it is necessary for Marketing Coordinators to spend a certain amount of time each week "in the field" visiting General Agencies. It is important to note that Marketing Coordinator is a salaried position and, thus, their compensation is not based on commission or on any factors relating to productivity.

William Penn generally employs two Marketing Coordinators. During the relevant time period, the second Marketing Coordinator at William Penn was Lisa Melville. In April, 2003 Melville resigned. In July, 2003, Danny Sullivan was hired to replace Melville. Shortly thereafter, William Penn made changes within its marketing department. These changes included reassigning the various territories among the Marketing Coordinators and partially re-defining their duties. Part of this reorganization included the reassignment of Melville's territories and agencies between Sullivan and the plaintiff. The parties dispute the nature and extent of the plaintiff's role as a Marketing Coordinator prior to Melville's resignation, during her absence, and following her replace-

ment. On September 4, 2003, the plaintiff resigned from her employment at William Penn because she was displeased with her responsibilities and duties following Melville's resignation and the hiring of Sullivan.

The gravamen of the plaintiff's complaint is that much of her daily responsibilities and geographic territories were unfairly removed from her and given to Sullivan, and that this was done because Sullivan is younger, male, and unmarried. The defendants dispute that the changes were the result of anything other than sound business judgment geared toward creating more personal contact between Marketing Coordinators and General Agents in order to stimulate productivity and boost sales. The defendants also contend that these changes resulted in nothing more than a minimal change to the plaintiff's prior business activities.

## II. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party demonstrates that no material facts are genuinely in dispute, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir.2000) (citing *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505, 91 L.Ed.2d 202); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990)(quoting Fed.R.Civ.P. 56(e)).

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 574 (2d Cir.2005)(quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990))(internal quotations and alteration omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.*

Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. Title VII

 Allegations of employment discrimination are governed by the three step burden shifting test as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); ; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination under Title VII. To do so "a claimant must show that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003); *Collins v. N.Y. City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002).

 The plaintiff's claims under NYSHRL are subject to the same legal analysis as their Title VII claims. *See, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 n. 1 (2d Cir.2000), 66 F.3d 1295, 1304 n. 4 (2d Cir.1995), ("The identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296, and the Administrative Code of the City of New York."); *see also Miller Brewing Co. v. St. Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985).

The defendants sole contention on this motion is that the changes William Penn made with respect to the plaintiff's job responsibilities are not of such a degree as to constitute an "adverse employment action" as contemplated by Title VII.

## C. An Adverse Employment Action

In defining what constitutes an "adverse employment action," the Second Circuit observed that "not every unpleasant matter short of discharge or demotion creates a cause of action" for discrimination or retaliation. *Richardson v. N.Y. State Dept. of Correctional Serv.,* 180 F.3d 426, 446 (2d Cir.1999).

> An "adverse employment action" is a materially adverse change in the terms and conditions of employment. To be "materially adverse," a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Such a change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage of salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to the a particular situation.

*Weeks v. N.Y. State (Div. of Parole),* 273 F.3d 76, 85 (2d Cir.2001)(quoting *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000))(internal quotation marks, citations, and alterations omitted); *see also Fairbrother v. Morrison,* 412 F.3d 39, 56 (2d Cir.2005)(explaining that to be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities") (internal quotation marks omitted); *Sanders v. N.Y. City Human Resources Admin.,* 361 F.3d 749, 755 (2d Cir.2004) (same); *Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57 (2d Cir. 2004) ("A tangible employment action, as defined by the Supreme Court, 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' "); *Williams v. R.H. Donnelley, Corp.,* 368

F.3d 123, 128 (2d Cir.2004) (quoting *Galabya*, 202 F.3d at 640); *Cooper v. N.Y. State Dep't of Human Rights*, 986 F.Supp. 825, 828 (S.D.N.Y.1997) ("[T]he mere fact that an employee has been transferred or that his job responsibilities have changed is not in itself sufficient to show an adverse change in working conditions"); *Garber v. N.Y. City Police Dep't*, No. 95 Civ. 2516, 1997 WL 525396, at *4 (S.D.N.Y. Aug. 22, 1997)(finding no adverse employment action where employee "earn[ed] the same salary, ha[d] the same benefits, work[ed] the same hours, . . . and ha[d] the same opportunities for promotion.").

■ Having reviewed the record in the light most favorable to the plaintiff, the Court concludes that she was not subjected to an adverse employment action. There is no evidence that the plaintiff was terminated; demoted; had her salary reduced; assumed a less distinguished title; or suffered material loss of benefits. As to whether the plaintiff's "material responsibilities" were "significantly diminished" following Sullivan's hire, in the Court's opinion, they were not. Although the plaintiff's territories were reduced and her responsibilities were somewhat altered, the changes were not of such a degree as to the bring the plaintiff within the protection of Title VII.

The plaintiff claims that after Sullivan was hired, her position was reduced to providing "support" for Dziomba, the Director of Agencies. Savarese Aff. ¶¶ 14–16. However, as the Director of Agencies Dziomba is in a superior position to Marketing Coordinator within the William Penn hierarchy. Savarese Aff. ¶ 14. First, as a Marketing Coordinator, the plaintiff had always been subordinate to the Director of Agencies, and this situation did not change after Sullivan was hired. Second, the plaintiff's allegations that Sullivan was afforded "greater opportunities for advancement" are conclusory and spec-

ulative. Savarese Aff. ¶¶ 11–12. The plaintiff does not identify any specific professional opportunity or promotion that she was denied after to Sullivan was hired. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (recognizing that "mere speculation or conjecture" is insufficient to create a disputed material fact and defeat summary judgment). Finally, and significantly, notwithstanding a reduction in the number of territories covered by the plaintiff, the plaintiff admittedly became responsible for more agencies within those territories after Sullivan was hired. Savarese Aff. ¶¶ 6, 18. Prior to Sullivan's hiring, the plaintiff was responsible for 43 agencies in various counties and one-half of William Penn's "National Accounts." Savarese Aff. ¶ 6. After Sullivan replaced Melville, the plaintiff became responsible for 50 agencies in two counties, and had been given responsibility for all of the "National Accounts."

The cases relied upon by the plaintiff in opposition to the defendant's motion are distinguishable. In *de la Cruz v. N.Y. City Human Resources Admin.*, 82 F.3d 16 (2d Cir.1996), the Second Circuit held that a transfer and reduction of responsibility, without corresponding monetary loss, was "adverse" under Title VII. However, the plaintiff in *de la Cruz* was transferred from an "elite" division to a "less prestigious unit with little opportunity for professional growth." *Id.* The Second Circuit's decision in *de la Cruz* does not require a finding of adverse employment action where the plaintiff has not presented evidence of any reduction in prestige or profession opportunity. *See Forkkio v. Tanoue*, 131 F.Supp.2d 36, 41–42 (D.D.C. 2001) (recognizing that *de la Cruz* establishes that a transfer *can* be adverse absent a change in salary *if* the plaintiff provides evidence, other than "conclusory statements of loss of prestige," of adverse consequences to her position or future ca-

reer); *cf. Rodriguez v. Bd. Educ.,* 620 F.2d 362, 366 (2d Cir.1980) (transfer of experienced middle school art teacher to elementary school constituted an adverse action). *Collins v. Illinois* is also inapplicable. *See* 830 F.2d 692 (7th Cir.1987). In *Collins,* the Court held an "adverse employment action" need not be limited to monetary harm. That point is undisputed here, but does not support the finding of an adverse employment action.

As recently as January 6, 2006, the Second Circuit highlighted an employment action resulting in a true loss of prestige and a significant change in material job responsibilities. *See Hoyt v. Andreucci,* 433 F.3d 320 (2d Cir.2006). Ron Hoyt was a long-standing corrections officer employed by Albany County who had been involved in union activities for many years. *Id.* at 322. Hoyt was elected to a union officer position and, pursuant to a written agreement between the union and the County, was granted full-time leave to fulfill his union responsibilities. After giving a speech critical of a County employee, in which Hoyt referred to a pending labor dispute involving the County, Hoyt was informed by the County that he had breached his agreement and would have to return to his regular duties as a corrections officer. The district court granted summary judgment in favor of the defendants finding that the revocation of Hoyt's full-time leave did not amount to an adverse employment action. *Hoyt v. Andreucci,* No. 02–CV–0226, 2004 WL 2414158 (N.D.N.Y. Sept. 30, 2004). The Second Circuit reversed. As a union officer, Hoyt presided over meetings with State entities and other unions, assisted in organizing new workers and in preparing for various arbitration proceedings, engaged in legislative affairs, and generally 'was responsible for the overall daily [union] activities.' By contrast, once Hoyt's leave was revoked, he had to report for duty at the Albany County jail and work as the booking officer in the Admissions and Discharge unit.

*Id.* at 328. Hoyt ultimately resigned as union officer because he could not perform the job part-time, thereby losing the additional stipend he was receiving. *Id.* The relatively minor changes at William Penn with respect to the plaintiff's role and duties as a Marketing Coordinator pale in comparison to the adverse action suffered in *Hoyt,* and the type of change in working conditions generally accepted by the Second Circuit as "adverse."

In sum, the Court finds that the rearrangement of the plaintiff's duties, without any loss in salary, benefits, title or material responsibilities, was a permissible business judgment. Lacking the essential element of an adverse employment action, this employment discrimination cause of action must be dismissed.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion pursuant to Fed.R.Civ.P. 56 for summary judgment is GRANTED; and it is further

**ORDERED,** that the complaint is dismissed in its entirety; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**